CaeutheRS, J.,
delivered tbe opinion of tbe court.
Tbis is an action brought by tbe Planters’ Bank as endorsee and bolder of a bill of exchange for $1409 98, drawn by tbe defendants on tbe 6th January, 1853, upon John H. Corl, at ninety days, in favor of E. Bobertson, by whom, as well as tbe defendants, it was endorsed. It was accepted by Corl, who in writing bis name, under tbe word “ accepted ” on the face of tbe bill, by tbe stroke or flourish of tbe pen, ran over, and nearly obliterated tbe right band lower part of tbe figure six, tbe. date of tbe bill, so as to make tbe same look like tbe figure one, except upon very close inspection.
Tbe bank discounted tbe bill for tbe defendants, as of tbe ' date of tbe 1st January, 1853, and tbe bank marks upon it, and tbe bill book represents it as due, *427 April 1st and 4th, 1853. The amount paid oyer upon the discount of the bill to defendants, and the interest retained, were regulated by the altered date, then considered by the plaintiff as the_ true date. The bill was sent to the agent of the bank at Chattanooga for collection. Before it became due, Corl, the acceptor, had left Chattanooga, and had no family, agent or place of business there. These facts are proved by the notary and others. In addition to which statement, as a reason for not making demand of the acceptor personally, he goes on to state that he demanded payment at the branch of the Union Bauk at Chattanooga, and the same being refused, he protests it, &c.
The demand at the bank was, perhaps, useless and nugatory. That was no compliance with the law, as the bill was not payable there. But the reason or excuse for not demanding payment of the acceptor, was good and sufficient. He could not be found. 2 Cain’s, 121. 3 McCord, 394. He had absconded from his usual place of residence, before the day of payment. 1 Watts & Serg., 126. Byles on Bills, 253, n. 1, and 267. He left no place of business, agent or family behind, had left the country, and gone to some place unknown.
These facts constitute an ample and sufficient excuse for want of demand of him. Of all these facts, due notice was given by the notary, with an unnecessary demand at the bank, and protest superadded. This bill was not made or accepted payable at any place, but was general. It was not necessary then to make demand at any particular place to charge the drawer or endorser. Byles on Bills, 263. The strictness of the *428 rules in relation to demand of tbe inmates of tbe bouse, or at tbe door, if tbe bouse be shut up, and tbe owner absent, or !not to be found, will generally be found to apply to eases where a particular bouse or place is designated for payment in tbe bill or acceptance.
But tbe ground of defence mainly relied upon in this case, is, that tbe bill was protested six days before it was due, and therefore tbe liability of tbe defendants, as drawers and endorsers, not having been legally fixed, they are discharged.
There seems to be no doubt, but that tbe bill was drawn on tbe 6th of January, 1858, and not tbe 1st, and payable at ninety days.
If there was nothing more in tbe case, it would be manifest, that tbe demand, protest, and notices were of no avail, as they were on tbe 4th, instead of tbe 9th of April.
The acceptor of a bill may alter tbe date before be accepts, and if this be concurred in by tbe other parties, it will bind them all. Byles on Bills, 310.• Alterations may be made before the bill becomes an available security by consent.
“When a bill is drawn for a debt due from tbe drawee to tbe drawer, and whilst in tbe bands of tbe drawee and before acceptance, it may, by consent, be altered in any material respect, as in date and time of payment,” because, until acceptance or negotiation, it bad not become an available security. Chitty on Bills, 186.
It cannot make any difference in principle, whether such alteration was made accidentally, or by design, if the parties interested concur in, and assent to it, after it is done, more particularly if it is passed by them *429 into the bands of innocent holders, in due course of trade. The proof shows that this bill, after acceptance, was returned to the drawers, endorsed by the payee, Robertson, and by them negotiated to the plaintiffs; and the same was discounted as of the altered date.
As evidence of this, it is shown that it was so entered on the “bill book,” and the proceeds paid to the defendants accordingly. They cannot be permitted to say, after this, 'that the alteration was not known aud agreed to by them, as they received the amount the bill produced upon that basis of calculation — it would have been less, if the interest had been deducted for six days longer. As circumstances to show that it was passed to and taken by the bank as of the 1st of January, the bill itself was submitted to the inspection of the jury, and the opinion of experts taken in evidence, in aid of the positive evidence of the officers of the bank, and their cotemporaneous acts in the entries upon their books.
As another test of the truth of the same facts, tho jury are instructed to consider from the inspection of the instrument, whether the alteration of the figure was so complete, as that a man of ordinary prudence and observation would not have detected it, but would have taken it to have been dated on the first, if so, all the other circumstances concurring, both parties would be held to that date, and their duties and obligations result accordingly.
It appears, however, that on the 10th March, 1853, the original bill was delivered over to the defendants, whose receipt was taken, and a copy retained. This copy was made out by Isaac Litton, then in the ser *430 vice of the bank, by order of the cashier, and filed. The date in that copy is the 6th January, 1853.
From this it is argued, that the true date was known to the plaintiff near a month before the maturity of the bill, and that they were bound to make a demand, and protest accordingly. It does not, however, appear that this copyist made known his discovery of the mistake under which they had labored, to the officers of the bank, or to the defendants, to whom he delivered the original. If both parties to the previous transactions had agreed to, and acted upon the altered date, it would require the concurrence of both to change it. Suppose the bank had become satisfied that the original date was the 6th, and had failed to protest, until the expiration of the ninety days from that time, could not the defendants have well said, the date had been altered before the bill was negotiated, and that was known and agreed to by all parties, and so passed to you, and consequently your protest is too late, and we are discharged? True, they might say, we drew and dated the bill on the 6th, but it was changed in the acceptance to the first, returned to us with that alteration, and we so passed it to you, as the amount of money received by us, as your own records and clerks will prove.
This circumstance may be competent for another purpose. It shows that the original bill again came to the possession of the defendants, probably for collection, or to try to make themselves secure against their liability, if they could. If there were any mistake about the date, to which they had not agreed, they had an opportunity to detect it and notify the holders.
*431 This is tfren, an additional fact to prove that there was no dissent on their part to the altered date. It does not clearly appear how the original draft got ont of their possession again, or whether the agent at Chattanooga acted under the direction .of the plaintiff or defendants in the demand and protest. But from the view we have taken, that would not be material.
We think then, there is no error in the judgment below, and that it should be affirmed.