## J. G. FULGHUM *v.* M. C. COTTON *et al.*

JUDGMENT CREDITOR AND PRIOR MORTGAGEE. *Their relative rights.* A judgment creditor, upon a return of *nulla bona*, has the right, by bill in chancery, to have a mortgage upon the land of the judgment debtor, which has matured, foreclosed, and, without the consent of the mortgagee, to have the land sold and proceeds applied first to the payment of the mortgaged debt, and the surplus to his judgment.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. W. F. COOPER, Ch.

J. P. HELMS for complainant.

J. C. BRADFORD for defendants.

McFARLAND, J., delivered the opinion of the court.

The complainant is a judgment creditor of the defendant, M. C. Cotton, with an execution returned *nulla bona*, and files this bill charging that said Cotton executed a mortgage conveying certain real estate in Nashville to A. G. Adams, J. M. Hamilton and H. H. McAlister, trustees of the Presbyterian Church, to secure them a loan of $2,500, with eight per cent. interest, the deed containing a power of sale in the event the debt and interest be not paid on or before the 3d of December, 1872; that complainant is informed that the $2,500 remain unpaid, together with some interest and taxes, amounting in all to about $2,700; that the mortgagees have advertised the property for sale, free from the equity of redemption, on the 20th of September, 1875, and unless enjoined, the sale would be made, as Cotton was insolvent and unable to pay the debt.

The bill then charges that on the 6th of July, 1874, the property had been sold for the taxes of 1873, and purchased by M. M. Brien, Sr., who had obtained a writ of possession, but said Cotton, on the 23d of July, 1875, filed his bill against said Brien, seeking to have said sale declared void, and praying for an injunction. A temporary injunction was granted, and the cause was still pending.

The various grounds upon which it was claimed

by Cotton, in his bill, that the tax sale was void, are set forth and repeated in the present bill, and it is insisted that the sale was void. The record of Cotton's case is made an exhibit to the present bill.

Complainant, upon these facts, charges that a sale, before the settlement of the question of Brien's tax-title, would be injudicious and a sacrifice of the property, as the cloud upon the title would deter bidders. It is also charged that the property will not sell for a sum sufficient to pay the debt of the mortgagees and the debt of the complainant, and Cotton being involved, a receiver should be appointed to impound the assets. And further, that the property will rent for enough to pay the interest on the debt of the mortgagees, and they will therefore not be injured by the delay necessary to clear the title, the fund in their hands being one upon which the interest only can be used.

Cotton, M. M. Brien, Sr., and the above named mortgagees are made defendants.

The prayer is that a receiver be appointed to take possession of and rent the property, for the purpose of paying the taxes and the remainder of the interest and principal of the debt due the mortgagees; that the tax-title of Brien be declared void, and the property then sold on a credit, first for the payment of the balance due said mortgagees, and, second, the debt of complainant.

Cotton suffered the bill to be taken for confessed. Brien answered, setting up and insisting upon the validity of his tax-title.

The mortgagees answer, admitting the loan by them to Cotton and the execution of the mortgage to secure the same; that the principal and the interest, since July 1, 1875, remain unpaid, and that, in strict pursuance of the power in the mortgage, they had advertised to sell the property for cash, without redemption. They admit further, that the facts are correctly stated in regard to the tax sale, and concur in the opinion that the same is void. They conclude thus: "Respondents are willing that the property be put in the hands of a receiver and rented out, and the rents and profits used in paying taxes due thereon, and in paying off the interest now due your respondents, and the interest as it becomes due, and such amounts as respondents have been compelled to pay for said Cotton, or on his account, and all other expenses. Respondents are also willing and anxious that the property be sold *under the decree of this honorable court,* and *they pray* that their *mortgage* be foreclosed, and the proceeds applied to the payment of their debt and interest, and the expenses incident to the sale."

Upon the filing of the bill, an injunction was granted enjoining the sale advertised by the mortgagees, and no motion was at any time made for dissolution.

Soon after filing the bill, an order was made, by the consent of the counsel for the mortgagees and Brien, for the appointment of a receiver as prayed.

The bill was filed the 1st of September, 1875, and the cause was heard by the chancellor on the 19th of November, 1876. The only evidence introduced

38—VOL. 6.

was the record of the case above referred to of Cotton against Brien.

The chancellor decreed that the tax sale was void and communicated no title to the purchaser, and that the cloud thereby created upon the title be removed; that the complainant Fulghum was entitled to a sale of Cotton's interest in the property, subject to the mortgage, *but not to a sale of the property itself* without the consent of the mortgagees, "which they refused to give, preferring to execute the mortgage themselves."

This latter statement is explained by the recital in the decree that, after the filing of the present bill, the mortgagees had filed another bill in the same court praying a foreclosure of said mortgage, and making only Cotton and wife defendants, who had answered, admitting that they had no defense. By order of the chancellor, the two causes were heard at the same time, each, however, to stand upon its own record, and the decree for the sale of the property was rendered under the bill filed by the mortgagees.

The complainant was ordered to pay the costs of the proceedings touching the tax-title, and also the costs of advertising the sale under the mortgage, which was enjoined in this case, and the injunction was, by said decree, dissolved, and the surety on the injunction bond also held liable for said costs.

It was adjudged that the costs of the receivership be paid out of the proceeds of the rents in the hands of the receiver, the remainder of the funds in the hands of the receiver, after paying the taxes, to be

paid over to the mortgagees on their mortgage debt. It was ordered that any surplus arising under the sale ordered in the other cause be held subject to the claim of the present complainant, such surplus to be appropriated to the complainant's judgment and the costs not otherwise adjudged, but if there be no surplus the complainant is required to pay all costs. From this decree complainant has appealed.

The principal error assigned, is the refusal of the chancellor to decree a sale of the entire property. The opinion of Judge Cooper, who determined the cause, is reported in 3 Tenn. Ch. R., 396, and takes the position that the only relief a judgment creditor is entitled to, in a case like the present, is a decree to redeem the mortgage by paying off the debt, and then having a decree for sale in satisfaction of his judgment and the mortgage debt, or a decree for a sale of the debtor's interest in the property, subject to the mortgage lien; that he is not entitled to a sale of the property itself in order to reach the surplus, unless the mortgagee consents; and although the mortgagees in this case had, by their answers, assented to the sale, yet, as there appeared on the docket a bill filed by them subsequently praying a sale, it was held that they had withdrawn their assent, and therefore a sale of the property in this cause was refused.

The chancellor's decision is founded upon the English authority in reference to the foreclosure of mortgages, to the effect that for such purpose a prior mortgagee was not a necessary party, and a decree

for the foreclosure of the prior mortgage could not be had without the prior mortgagee consent. A decree of foreclosure, however, under the English practice, was not a decree for the sale of the property, but a decree cutting off the equity of redemption. The English authorities have been followed in some of the American courts, even where the practice has been to decree a sale instead of a foreclosure; but in this respect they are not uniform. See on this subject *Clark* v. *Prentees*, 3 Dana (Ky. Rep.), 468; *Champion* v. *Foster*, 7 B. Monroe, 104; *Persevy* v. *Alsip*, 2 Ind., 67; *Skunotesh* v. *Dow*, 21 Iowa, 363; *Morris* v. *Wheeler*, 45 N. Y. The greater number of cases, however, may be in support of the old rule. See Jones on Mortgages, vol. 2, sec. 1439, and authorities there cited.

In this State decrees of foreclosure have not been adopted, but decrees of sale; and it may be safely said that the practice has been generally to make prior incumbrancers parties, and *sell*, not the mere equity of the debtor, *but the property itself*, so as to vest the purchaser with an absolute title, and apply the proceeds according to the right of priority of the several incumbrancers.

This course is to be commended, in that it avoids multiplicity of suits, is a direct mode of accomplishing the proper result, and does injustice to no one.

It is argued that to hold contrary to the chancellor's conclusions will be arbitrarily to overrule a well-settled line of decisions and disregard well-settled law. The authorities, however, have never been adopted in

this State, and it is more than probable that an attempt to revive and apply them now would be a great surprise to the profession.

It is certain that we have no reported case in this State holding that a mortgagee may prevent a sale of the mortgaged groperty at the instance of a judgment creditor seeking the surplus. The cases of *Cloud* v. *Hamilton*, 3 Yer., 81; *Mims* v. *Mims*, 1 Hum., 425, and *Rowan* v. *Mercer*, 10 Hum., 359, have no tendency in this direction. It is equally true that we have no case holding that the sale may be had over the mortgagee's objection. In fact, we presume the question has never been made. The practice has always been, as said in *Cloud* v. *Hamilton*, to sell the property. Nothing is said as to the consent of the mortgagee; and we presume that it has seldom occurred to a mortgagee that it was to his interest to object.

It has not, so far as we know, been the practice either in such cases to compel a judgment creditor to redeem the mortgage or to sell the mere equity of the debtor in the property. In fact, it was held in *Lane* v. *Marshall*, that an attachment levied upon land to which the debtor had only an equitable title, fixed no lien upon it, and the purchaser acquired nothing, not merely because it was not described as an equitable title, but because, to attach it, the holder of the legal title was a necessary party, so that the sale would pass the entire title. That was a case where the debtor held the land by title-bond, subject to unpaid foreclosure money. It was held that an attach-

ment and sale, without making the holder of the legal title a party so as to effectuate the object had in view—that is, a sale of the property—passed nothing to the purchaser. A vendor by title-bond, holding the legal title as security for unpaid purchase money, it has often been said, occupies a position very similar to a mortgagee.

Whatever may be the right of successive mortgagees, our statutes give ample remedy to a judgment creditor to subject the interest of his debtor in property that cannot be reached by execution, and we do not think his relief should be confined to the remedy indicated by the chancellor in this case. If a debtor should die and his estate be insolvent, it can hardly be doubted that a sale of the mortgaged property might be had, even though the mortgagee should object, and the same principle should apply upon a return of nulla bona showing the insolvency of the debtor.

Such course can do the mortgagee no possible injustice, a sale of the property, after the maturity of his mortgage, giving him priority for the full amount of his debt, interest and expenses, is precisely what he has contracted for and all he can claim, unless it be simply the privilege of saying when he will avail himself of the remedy, and when the rights of other creditors are involved we think he should not be allowed this privilege. It is argued that a mortgagee ought to be allowed to control his own security and determine when it is to his interest to foreclose. But when his mortgage is due, he should not be allowed

arbitrarily to stand in the way of other creditors. To deny a judgment creditor any relief except the right to redeem, might be to deny him practically all relief, as the mortgage debt might be beyond his means, and yet the property amply worth both debts. So that, if the question were fairly presented, I should not hesitate to say that the complainant was entitled to a sale even without the consent of the mortgagees. But if we look alone to the record in the case, no such question arises, as we have seen the answer of the trustees assented to the sale, and there is no part of *this* record which shows that the consent was withdrawn, and we believe all the authorities agree that when assented to the sale should be ordered.

We do not see that the pendency of another suit, recited by the chancellor's decree, is a matter that we need look to. It does not appear to have been read as evidence on the trial of this cause, nor is it any part of the present record. We have the pleadings, which agree in their prayer for the sale of the entire property, and no proposition in the court below to correct them in this respect, so that the case might well be rested upon the ground that the mortgagees have assented to the sale.

While we are of opinion that a mortgagee can have no just ground of complaint at a decree of sale after the maturity of the mortgage and in accordance with its terms, yet, whether he shall be *delayed* and *prevented from selling*, is a wholly different question. It would be manifestly unjust where a mortgagee is secured by a prior mortgage, as to which no dispute

exists between him and the mortgagor, that the former shall be delayed in his remedy by litigation between the mortgagor and other creditors, as to which he has no interest. We should say that, in general, the mortgagee ought not to be thus delayed and embarrassed, but should be allowed to proceed at once to sale, either under the power of his mortgage or by decree, leaving the other parties to litigate over the proceeds.

The question whether the present bill made a case for injunction against the sale advertised by the mortgagees, is one as to which we need express no opinion, and one about which there may be a good deal of doubt.

But no objection was made to the delay, the answer joined in the prayer of the bill for a sale under the decree of the court, and no motion was made to dissolve the injunction, and the mortgagees took the benefit acquired under the present bill, both in the removal of clouds upon the title as well as the benefit of the receivership.

We think a mortgagee would have a much stronger ground to complain at being *thus delayed* and embarrassed than in being forced to a sale, but if he chose to acquiesce in the delay necessary to remove clouds from the title, he cannot afterwards complain. We are further of opinion that additional costs and expenses incurred without the concurrence or consent of the mortgagee, ought not to be imposed upon the mortgaged property. Their security ought not to be

thus lessened, and such costs, if they prove a loss, should fall upon the complainant, and the chancellor's decree in this respect is correct.

We are therefore of opinion that, upon this record, the chancellor erred in refusing a sale of the property, especially as it was assented to. We have had some doubt whether the error was one practically affecting the complainant or resulted in any injury to him. While a decree for the sale of the property in this case was refused, yet a decree of sale was rendered in the other case—precisely such decree as should have been rendered in this case, as it followed. the letter of the mortgage and the complainant was given the same right to reach the surplus as he would have had had the decree been ordered in this case. And, inasmuch as the complainant might have realized the surplus arising under the sale in the other case, we have doubted whether there ought to be a reversal. However, upon the theory of this opinion, the complainant, by filing this bill, fixed a lien upon whatever surplus might arise. Now, to allow the mortgagees, after assenting to a decree of sale in this case, to advertise and sell under the powers of their mortgage, would put it in their power to defeat the lien altogether, and to allow them to file another and separate bill for the purpose might have the same effect. The complainant would have no right to compel the mortgagees to proceed under their decree. They would be at liberty to dismiss their bill at any time, and thus leave complainant without remedy. We therefore conclude that the refusal to decree a sale of the

property in this case was error, for which the decree should be reversed.

The foregoing are the conclusions at which we have arrived after considering the case upon a petition to rehear. The petition to rehear dismissed.