IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

# EASTERN DIVISION.

KNOXVILLE, . . . . . . . SEPTEMBER TERM, 1882.

CHRISTOPHER SCHULTZ *et al* v. JNO. D. BLACK-
FORD *et al.*

CHANCERY PLEADINGS AND PRACTICE. *Sales to enforce trusts. Advance
bids.* Chancery, at the instance of a creditor and over the protest of the
trustee, will sell land previously conveyed in trust to secure other
creditors, and apply the surplus to the satisfaction of the claims of
complainant creditors. Such sales will be opened upon advanced bids
and possess all other incidents of chancery sales. It is proper, but
not necessary, for the court to appoint the trustee as special commis-
sioner to sell the land. COOPER, J., dissenting.

FROM HAMILTON.

Appeal from the Chancery Court at Chattanooga.
W. M. BRADFORD, Ch.

L. B. HEADRICK and BARTON & SON for com-
plainant.

Schultz *v.* Blackford.

HALBERT B. CASE for trustee.

FREEMAN, J., delivered the opinion of the court.

This case is before us, as to Jno. D. Blackford, the mortagor, on appeal, and as to complainant, Shultz, by writ of error.

The bill is filed by Shultz, a creditor of Blackford, by judgment, including costs, amounting to about $80, on the following state of facts:

Blackford had conveyed the tract of land, near the city of Chattanooga, to Case, in trust, to secure a debt of some six hundred dollars. This conveyance was made in March, 1878, the note having twelve months to run, the property to be sold by the trustee in case of default of payment. The debt was not paid, and the trust not executed, or any steps taken to do so, when, on the 3d of March, 1881, this bill was filed to have the trust enforced, the land sold, and any surplus arising from the sale, appropriated to the payment of complainant's debt. Some weeks after service of process, the trustee advertised the property for sale under the power contained in the deed. Thereupon, the trustee and creditor, under the deed of trust, filed their answer, in which the fact that the property was then advertised for sale is stated, and the trustee insists on his right to proceed with said sale under the power, and declines to waive his right to execute the trust and pay the note and expenses out of proceeds of the sale. The trustee, however, says that if the land so sold shall

bring more than enough to pay the debt and expenses of the trust, he is willing to pay the balance into court to be disposed of under the orders of the court.

The bill having been taken for confessed as to Blackford, was heard as to the other parties, when the chancellor declared a lien in favor of complanants, on the surplus, by virtue of their bill. He recognized the right of the trustee, however, to refuse to permit the sale to be made by the court, or under its direction, and simply declares the lien and makes his decree on the assumption, that inasmuch as the party had submitted to pay over the surplus to be dispensed of by the court, he could dispose of this, and so directs it, when paid, to be paid over to complainant. Case, the trustee, on this basis is ordered to pay the surplus into court, after paying debt and expenses of trust. He, however, then proceeds to declare that, if the trustee fail to sell under the deed of trust within three months, the master shall proceed to sell the land and pay off the prior liens, and complainant's debt, and if the debt is not paid by this process, he then orders execution to issue for any balance remaining unpaid.

The latter part of this decree antagonizes the assumption of the first part, that the trustee had the right to refuse to allow the sale to be made by the court, if literally construed, because it does not propose to do so in case of failure to sell within the time prescribed by the court. It was contended, that the court simply meant to allow the trustee to sell

subject to the order of the court as to the time in which it should be done, and when his sale was reported and surplus ascertained, then the appropriation to be made. That the trustee was of necessity to be in some degree under the direction of the court is seen, by supposing that after the sale he had refused or failed to report as required, it could not be questioned that it would have been the right and duty of the court to compel him to make said report, and pay into court such surplus—otherwise the court had made a decree which it could not have executed, which would be absurd.

Passing from this, the real question in the case is, whether the court erred in holding and decreeing, that upon the refusal of the trustee, and his insisting on his right to proceed with the sale under the power, after complainant had filed his bill, there was error? This is the turning point in the case, because the refusal of the court to open the biddings was based on the proposition that the sale was one the court had no control over—not made under its decree—and therefore the court had no jurisdiction over the sale, and no authority to act on the application to open the biddings. He thus construed his own decree and acted on it.

It has been held by this court, in the case of *Fulgum* v. *Cotton*, after careful consideration, that a judgment creditor had the right, without the consent of the mortagee, or any prior encumbrancer, to file a bill, have the mortgage or trust enforced, an account taken of the mortgage or trust debt, and the prop-

Schultz *v.* Blackford.

erty sold for the payment of the debt secured, and after paying expenses of the trust, and secured debt, the surplus to be appropriated by a decree of the court to his own judgment.

The principle of this case had been announced by this court in 1832, *Cloud* v. *Hamilton & Litton*, 3 Yer., 81), the Chief Justice saying: "Our practice is to sell in aid of the execution at law, giving the equitable owner and debtor time and leave to satisfy the debt, when, if this be done, the bill is dismissed, and all collateral litigation arising incidently among defendants ceases." He further stated the rule that if the prior incumbrancer desired relief independent of the judgment complainant, his remedy was either by a cross-bill, or an original bill to enforce his encumbrance. We should say a bill in this nature of a cross-bill is the appropriate remedy. The like practice is suggested in the opinion of Judge McFarland, in the case of *Fulgum* v. *Cotton*, 6 Lea, 590, where it is said the mortgagee or encumbrancer should not be delayed, but allowed to proceed to sell either under his power or decree of the court, leaving the other parties to litigate over the proceeds.

The principle conceding that a creditor of the mortgagee has rights as against the property of his debtor, though mortgaged, is implied in the holding of the English courts, that after an account had, and decree of foreclosure to which subsequent creditors are not parties, an allegation and proof of collusion in taking the account, it will be opened at the suit of such creditor, in order that the property shall only

be charged with the true sum due: See *Rowan* v. *Mercer*, 10 Hum., 361–2, and cases cited.

If these principles are conceded, then it follows, that on such a bill as the present the complainant has the right to have the trust enforced under the decree of the court, the account taken in the first place, and the whole sale subject to the direction of the court in order that it be fairly done, and his rights protected and enforced. It was so held in the case referred to, 6 Lea, 601, and for the sound reason that, "to allow the mortgagee to proceed to sell under the power, independent of the control of the court, would put it in his power to defeat the right of the complainant in the bill entirely, and even to allow him to file a separate independent bill, might have the same effect, the complainant having no power to compel the party to proceed in such independent case. In fact, if the right to file the bill by the creditor is allowed, and to enforce the trust in order to the ascertainment and appropriation of the surplus, then it must be enforced independent of the trustee or prior encumbrancer, for if subjected to his option or consent, then it is not a right, but only a permission, and could not be enforced at all.

We therefore conclude in accord with the case of *Fulgum* v. *Cotton*, that if the decree of the chancellor is rightly construed by him, as not ordering a sale, and the sale not made under complainant's bill, then it was erroneous, and complainant was entitled to have a sale made under the direction of the court, and subject to its revision and control. Such a sale

as would be subject to all the incidents of a chancery sale. We do not mean to say, it is imperative that the court should take the sale out of the hands of the trustee, where he is willing or desires to make it. It being an execution of the trust by decree of the court, he may well be directed by the court to make the sale, and be appointed special commissioner, if need be, for this purpose. But the sale should be made under the decree of the court, and as we have said, subject to all the incidental control and direction in ordinary chancery sales.

This case well illustrates the necessity of the rule we have stated. It is clearly shown that the property has been sold at a great disadvantage, that the creditor, who alone bid for it, has obtained it at a large undervaluation; for one piece an advance bid is offered in cash of fifty per cent, yet the chancellor held he had no power to give relief because the sale was not made by, or under the direction of the court. It is made in the course of a proceeding properly instituted, in which the complainant was legally entitled to have the land sold; and yet the chancellor has refused the relief and permitted a sale by the trustee, where the rights of complainant are ignored, and may be sacrificed.

The result is the original decree will be reversed, and a resale ordered in accord with the terms and enforcement of the trust. The respondents, Siters and Case, will pay the costs of this court. Costs of court below to be disposed of by the chancellor in final disposition of the case.

COOPER, J., delivered the following dissenting opinion:

I am unable to concur with my brother judges in the conclusion reached in this' case. The mortgagee declined in his answer to assent to a sale by the court of his interest in the mortgaged property, and insisted upon his right to sell under the power conferred by the contract. I am of opinion that the court has no authority to interfere with the obligation of a valid contract of mortgage, except upon the application of one of the contracting parties upon good cause shown, or upon the application of some person legally entitled to be subrogated to the shoes of one of the contracting parties, and then only the extent of the rights of such party. It is upon the latter ground that a creditor of the mortgagor is permitted to redeem by the payment of the mortgage debt whenever the mortgageor might thus redeem. The creditor cannot claim any higher or different rights than those of the debtor whose interest he is seeking to subject. He may sell the entire estate with the assent of the mortgagee, for the latter is entitled to such a sale. There is no authority for anything further in *Cloud* v. *Hamilton*, 3 Yer., 81. In that case the lien creditor acquiesced in the decree of sale. That decree, it sufficiently appears, was that the debtor pay the complainant's debt within a given time, and on failure that the land be sold. Under this decree, the lien creditor might be deprived of its benefits either by a voluntary dismissal of the bill by the complainant, or by the payment by the debtor of the com-

plainant's debt before a sale. The lien creditor, therefore, moved the court that the decree be modified so as to require the debtor to pay the lien debt first within a given time, and on failure, that the land be sold in satisfaction of that debt. But the court declined to make the modification because the lien creditor could only entitle himself to such relief by a bill filed for the purpose. It has been repeatedly held by this court that a mortgagee may enforce his rights without reference to either prior or subsequent encumbrancers: *Mims* v. *Mims*, 1 Hum., 425; *Rowan* v. *Mercer*, 10 Hum., 359; *Fletcher* v. *Coleman*, 2 Head, 384. It is difficult to see how a creditor can, by the mere filing of a bill, to reach his debtor's equity of redemption, acquire a higher right than an encumbrancer by contract or by judgment. The mortgagee, it seems to me, still has the right to execute, or enforce his contract according to its terms. To cut down the security by the costs of a judicial proceeding and sale when the contract stipulates for a different mode, which neither of the contracting parties seeks legally to interfere with, seems to me to be an unauthorized violation of contract rights. I concede that the present decision is in accord with the principles enunciated in *Fulgum* v. *Cotton*, 6 Lea, 590. I was incompetent to sit in that case and did not participate in the decision. I dissent, respectfully, from its rulings, and from the opinion sanctioned by the majority of the court in the present case.