PRICHARD BROS., *et al. v.* ANNA H. CAUSEY, *et al.*

(*Nashville.* December Term, 1928.)

Opinion filed January 12, 1929.

G. P. Douglass, for appellants.

Sivley, Evans & McCadden and W. W. Swift for appellees.

Mr. Justice McKinney delivered the opinion of the Court.

These four causes were consolidated and heard together, and involve contests between furnishers of material used in the construction of an apartment house in Memphis, and the holder of a deed of trust on the property improved.

The Chancellor dismissed the bills, and, upon appeal, his decree was affirmed by the Court of Appeals.

*(1)* On April 29, 1926, Riverside Realty Company entered into a written contract with Causey for the purchase of the lots upon which the apartment house was later constructed. Causey was to have two weeks within which to examine the title to the lots. The contract price was $10,000, $1,000 to be paid in cash, and deferred payment notes were to be executed for the balance, to be secured by a deed of trust on the lots.

After the contract of sale was executed Causey contracted with complainants for material to be used in said house, and the delivery of material on the lots was begun on May 6 and 7, 1926, and before Causey acquired title to the property.

On May 22, 1926, Riverside Realty Company delivered a deed to Causey, the recited consideration being $10 and other valuable considerations. This deed was recorded on May 26, 1926. Contemporaneous with the delivery of said deed Causey delivered to the Realty Company a deed of trust to secure the deferred purchase money. This deed of trust was recorded on May 24, 1926.

The other courts have found that the deed and deed of trust were delivered at the same time and constituted one transaction. This finding is not questioned.

Complainants take the untenable position that when the deed conveying absolute title was delivered on May 22, 1926, their liens became effective and constituted a superior lien to that of the Realty Company, evidenced by the deed of trust.

Complainants acquired a lien only as to the interest vested in Causey, which was an equity subject to the lien of the Realty Company for the unpaid purchase money.

*(2)* It is conceded that had a lien been retained in the deed for the purchase money the claim of the Realty Company would have been superior to that of complainants.

*(3)* It is well settled that where a contract of sale is entered into and a bond for title executed, the vendors' lien is superior to the mechanics' lien. *Crittenden Lbr. Co. v. Ward,* 153 Tenn., 383; *Gillispie v. Bradford,* 15 Tenn., 170.

In the first-named case it was said: "Bond for title is generally recognized in equity as substantially equivalent to a sale of land by means of a conveyance with the purchase money secured by mortgage or trust deed."

In the latter case of *Gillispie v. Bradford,* it was expressly held that a vendor, executing bond for title, had a lien superior to that of a mechanic.

*(4)* It is generally held that a vendor's lien is superior to that of a mechanic, and, upon principle, we think this is true whether the vendor executes a bond for title, or a deed retaining a lien on its face, or executes a joint instrument with his vendee, by which he conveys title to the vendee and the latter, in turn, conveys the property by mortgage or deed of trust to secure the purchase money, or where, as in these causes, contemporaneous with the delivery of the deed, the vendee delivers a deed of trust or mortgage to secure the unpaid purchase money. They all have the same object, constitute but one transaction, and vest in the vendee the same interest. In neither case has the vendee ever been vested with an absolute title, but, whatever method is adopted, he takes the land subject to the vendors' lien, and his creditors can obtain no greater interest than he possesses. This view is well supported by the authorities. In 40 C. J., 296, it is said:

"It is well settled that, where a person not the owner of the property, but in possession thereof under a contract of sale or otherwise, makes improvements thereon and subsequently receives a deed of the property, and at the same time executes and delivers to the vendor a purchase-money mortgage, such mortgage is prior to mechanics' liens arising out of the improvements."

In the note will be found many cases supporting the text.

It is not contended that the Realty Company induced or procured complainants to furnish this material, or agreed that they should have a prior lien for same, so as to bring the causes within the exceptions pointed out in 40 C. J., 111.

The Realty Company did agree, as it had a right to do, that its mortgage should be subordinate to one given by the purchaser to obtain money with which to erect a building upon the lots.

(5) In 40 C. J., 296, it is said: "The fact that a vendor agrees that his purchase-money mortgage shall be subordinate to one given by the purchaser to obtain money with which to erect a building on the premises, does not render it subordinate to mechanics' liens."

In *Ragan* v. *Howard*, 97 Tenn., 334, it appears that title to the lot was vested in the purchaser for six days before a mortgage securing the purchase money was executed. In the meantime the mechanics' lien had attached.

In *Bridges* v. *Cooper*, 98 Tenn., 390, it is said: "To be operative as parts of a single transaction, the different instruments must take effect at the same time. Simultaneity is absolutely essential in every instance."

The record indicates that complainants made no investigation as to the title to this property, but rather

trusted to the financial responsibility of Causey, to whom they had previously furnished materials that were used in other buildings which he had erected.

(6) By sections 3536-3537 of Shannon's Code methods are provided by which mechanics may obtain priorities over mortgages and vendors' liens, but complainants did not undertake to comply with these statutes.

The vendor acquired the first lien, was not interested in the building to be erected, and in nowise misled the complainants to their prejudice. We hold, therefore, as the other courts did, that the vendor had the prior lien.

(7) As to the Ideal Heating Company, it is conceded that it waived its lien in writing, but the contention is made that this would not prevent it from recovering parts of the material which it furnished that have not become attached to the freehold. It certainly violates the spirit of the waiver, if not the letter. What would the beneficiaries of the waiver profit if this Company were permitted to remove the materials? It appears that this Company furnished and installed the heating plant for the building, and counsel in his brief has not pointed out the parts which his client proposes to remove; neither has he cited us to the record where evidence as to this may be found, as required by the rules of this court. It is not incumbent upon the court to scrutinize the record for the purpose of discovering whether there is some evidence upon which this Company may be granted relief.

(8) Finally, it is said that the sale by the trustee, under the deed securing the purchase money owing to the Realty Company, is void.

The property was advertised and sold on July 6, 1927, and a deed executed to the purchaser before the trustee

had any knowledge of a pending suit. Less than one hour before the sale the complainants filed ordinary attachment bills, and about twenty minutes before the sale attachments were levied upon the property.

While the bills asked that the trustee and the beneficiary thereunder be made parties, they were not made parties by notice or service of process until the next day. The bills did not refer to the sale, did not seek to enjoin it, or to reach the equity of the Realty Company in the property, and did not ask for the foreclosure of the deed of trust. The theory of the complainants was that they had a prior lien on this property to satisfy which the court should decree a sale of the property.

The question as to the sale by the trustee being void was not passed upon by the Chancellor, and was evidently raised for the first time in the Court of Appeals.

Complainants are not judgment creditors and cannot, therefore, have any relief under section 6092 of Shannon's Code.

Section 5260 of Shannon's Code is in this language: "Attachments may be levied upon any real or personal property of either a legal or equitable nature, debts or choses in action, whether due or not due, in which the defendant has an interest."

Construing the statute this court, in *Lane* v. *Morgan,* 48 Tenn., 33, said:

"But, in order that an equitable interest in land may be subjected by attachment, the bill must be framed with that view, and the allegation must give to the Court jurisdiction to effectuate the object sought to be accomplished."

The above statement has been approved in numerous reported cases.

Counsel for complainants rely upon *Harris* v. *Beasley,* 123 Tenn., 605; *Bridges* v. *Cooper,* 98 Tenn., 381; *Shultz* v. *Blackford,* 77 Tenn., 431; and *Fulghum* v. *Cotton,* 74 Tenn., 590.

In those cases judgment creditors, with *nulla bona* returns, filed their respective bills to reach an equity which their debtors had in certain property. In each case the trustee and beneficiary were made parties by service of process, and in that situation it was held that the trustee, without the authorization of the Court, could not make a valid sale.

If, in the present suits, the complainants had sought to reach the equity of the Realty Company in these lots, and process had been served on the Realty Company and the trustee prior to the sale, there might be some merit in their contention.

Where the trustee is not enjoined or served with process he has a right to sell. *King* v. *Patterson,* 129 Tenn., 1; *Jackson* v. *Coffman,* 110 Tenn., 272.

The *lis pendens* does not become operative until service of process. *Harris* v. *Beasley, supra.*

In *Brown* v. *Brown,* 34 Tenn., 430, it was said: "We think it clear that the attachment which secures and enforces the mechanics' lien must be considered as auxiliary and collateral to the original process, which compels the appearance of the defendant."

By section 5267 of Shannon's Code it is provided: "Any transfer, sale, or assignment, made after the filing of an attachment bill in chancery, or after the suing out of an attachment at law, of property mentioned in the bill or attachment, as against the plaintiff, shall be inoperative and void."

This statute is limited to sales or transfers made by the debtor. *Bank* v. *Mitchell,* 2 Shan. Cas., 62.

*(9)* It would frequently work an injustice if, after a trustee has gone to the expense and trouble of advertising the property for sale, procuring prospective purchasers to attend, conducting the sale, executing a deed to the purchaser, making settlement, etc., the whole proceeding should be declared void simply because some outside party had just before the sale, and without any notice to the trustee, filed a bill seeking to reach an equity which the debtor might have in the property.

Since in these causes the property did not bring a sufficient sum to liquidate the purchase money due, it necessarily follows that the foreclosure of the deed of trust extinguished complainants' liens.

Finding no error in the decree of the Court of Appeals, it resulted that the petition for writ of *certiorari* will be denied.