**THIRD NATIONAL BANK IN NASHVILLE, Plaintiff-Appellant,**

v.

**James T. McCORD and Roberta McCord, et al., Defendants-Appellees.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Jan. 10, 1985.

Application for Permission to Appeal Denied by Supreme Court April 1, 1985.

Richard Dance, Dance & Lincoln, Nashville, for plaintiff-appellant.

James A. Martin, Matthew J. Sweeney, Dearborn & Ewing, Nashville, Jane B. Forbes, Franklin, for defendants-appellees.

## OPINION

TODD, Presiding Judge, Middle Section.

The background of this suit involves three banks and a number of individuals. However, the remaining issue on appeal is between Third National Bank and Commerce Union Bank as to the right to proceeds of the sale of mortgaged property. The Chancellor rendered summary judgment disallowing the claim of Third National which has appealed.

The uncontradicted evidence shows the following pertinent facts:

On July 11, 1979, Mr. and Mrs. McCord borrowed $64,800.00 from First Tennessee Bank secured by a duly recorded trust deed upon certain land.

On September 2, 1981, the McCords borrowed $32,500.00 from Commerce Union secured by duly recorded trust deed upon the same land.

On November 19, 1982, the McCords renewed and increased the Commerce Union loan to $42,161.91 secured by an amended trust deed to the same land which trust deed was duly recorded.

On January 28, 1983, Third National filed this suit to collect a note and a dishonored check from the McCords.

On February 22, 1983, the McCords entered into a contract to sell the same land to the Johnsons free of encumbrances.

On March 31, 1983, Commerce Union purchased from First Tennessee Bank the note of $64,800 due from the McCords.

On April 18, 1983, Third National obtained a judgment against the McCords for $14,740.74.

On the same date, April 18, 1983, the judgment was duly recorded in the Register's office.

On July 12, 1983, the property was sold at foreclosure sale by J.H. Ockerman, trustee under the trust deed dated September 2, 1981 securing the debt of $32,500.00 to Commerce Union Bank. The property was purchased at the foreclosure sale by Commerce Union Bank for $36,500.00.

On the same date, July 12, 1983, Third National filed a supplemental complaint for discovery of assets of the McCords, adding as defendants, Ockerman, Trustee, Commerce Union, and the Johnsons.

On September 13, 1983, Commerce Union Bank sold the property to the Johnsons for $110,000.00. On that date, the McCords total debt to Commerce Union, including the first mortgage purchased from First Tennessee, the $32,500 borrowed on September 2, 1981, and the $9,661.91 additional loan on November 19, 1982, was $112,354.93. Commerce Union released all its outstanding liens on the land.

On the same date, an agreed order was entered transferring Third National's lien claim from the property to an escrow fund of $15,140.78 derived from the sale of the property to the Johnsons.

The chancellor rendered summary judgment disallowing the claim of Third National to the escrow fund.

Third National presents the issues for review as follows:

The Trial Court erred in granting the Motion for Summary Judgment filed by Commerce Union Bank because the foreclosure of the deed of trust did not extinguish the inferior judgment lien of the Plaintiff, Third National Bank.

The Trial Court erred in granting the Motion for Summary Judgment filed by Commerce Union Bank because the Record shows there were excess proceeds left from the foreclosure that are owing to Plaintiff.

Third National relies upon certain circumstances not related above, which are:

1. The Johnsons lived in the McCord house from May 16, 1983, until September 13, 1983, without any payment to the McCords or Commerce Union.

2. The closing of the sale to the Johnsons was delayed because of the various lien claims and a representative of Commerce Union told the Johnsons that a foreclosure would "wipe the slate clean."

3. After the foreclosure, Commerce Union sold to the Johnsons on the same terms as the McCord-Johnson contract.

Third National argues that Commerce Union, the McCords and the Johnsons "conspired" to go through the foreclosure procedure to "wipe away" the lien of Third National and that "this type of action should not in equity and good conscience take place."

No authority is cited to support the foregoing argument, and none is known to this Court. There is no reason in logic, law or equity why the holder of a mortgage debt, or a series of mortgage debts may not with propriety arrange the most advantageous disposition of property acquired by foreclosure of one of the mortgages. There is no hint of fraud or impropriety in the acquisition of the first mortgage, the foreclosure of the second mortgage, or the use of the price ultimately obtained for the property to reduce the mortgage debts which were prior in right to that of the judgment lien of Third National. The evidence shows that the debts secured by the first and second mortgages have never been fully satisfied, even by the private sale to the Johnsons. Until the prior mortgages are satisfied, Third National, as junior lien holder, has no rights.

■ Where a foreclosure sale does not produce proceeds in excess of the mortgage, junior liens are extinguished. *Prichard Brothers v. Causey*, 158 Tenn. 53, 12 S.W.2d 711 (1929).

■ Appellant insists that, where a *mortgagor* becomes the purchaser at a foreclosure, *his* purchase of a prior mortgage will not defeat a subsequent encumbrance. This is a well established rule of

law, but it is not applicable to the present case.

A *mortgagor* is one who pledges his property as security for debt. Black's Law Dictionary, Fourth Edition, p. 1163. A *mortgagee* is one who takes or receives a mortgage. Ibid. In the present case, the McCords were the only mortgagors involved in any of the mortgages. There is no evidence that they or either of them ever became a purchaser at foreclosure. Commerce Union, which did become a purchaser was a *mortgagee*, not a *mortgagor*, hence the stated rule is inapplicable to Commerce Union.

In *Loan Corporation v. Guaranty Title Trust Co.*, 168 Tenn. 118, 76 S.W.2d 109 (1934), cited by appellant, the above rule is stated as to mortgagors. However, the Court said:

> The conditions as to which a declaration is sought, as set forth in the bill, may be illustrated:
>
> A, owning land unincumbered, makes and records a first mortgage thereon with power of sale, to secure a debt to B. He thereafter makes and records a second mortgage on the same land to secure a debt to C. (It does not appear, in the case presented, whether or not the second mortgage contained warranties against incumbrances; the pertinency of this being hereafter made to appear. Following default, the land is lawfully sold under the power of sale in the first mortgage and bought in by, or for, B. Subsequently, complainant corporation, upon the consent of B to accept securities issued by it in satisfaction of its original mortgage debt, takes from A a mortgage of the same land to secure said debt—in effect a redemption—the land being conveyed to A by B in order that he may so mortgage it, pursuant to and in execution of this plan, the conveyances by B to A, and by A to secure complaint being practically contemporaneous in execution and registration. May C assert a claim against the title thus conveyed to complainant, based on his unsatisfied

second mortgage, superior to that of complainant corporation?

However, conceding that the mortgagor, for reasons indicated, might not himself hold the reacquired property against his second mortgagee in certain cases, we think it clear that the complainant herein, acquiring title under the conditions set forth in the bill, illustrated in the foregoing part of this opinion, is entitled to hold free from all mortgage or other liens created subsequent to the registration of the foreclosed first mortgage. Having regard to the substance of the transaction, its true effect, and giving due consideration to the relative equities, we have here a debt originally secured by first mortgage which has never been paid. No release or satisfaction of the first lien on the land securing it has ever been made. No such result has been at any stage in the contemplation of the parties. On the contrary, the forms of transfers of title employed have been directed solely toward an extension of the debt for the benefit of the original mortgagor. The complainant becomes a beneficial intermediary, a substitute mortgage creditor, entitled in all good conscience and equity to the first lien originally created in favor of the original creditor. By analogy, this general rule has application—"Where the holder of a senior mortgage discharges it of record, and contemporaneously ... takes and registers a new mortgage, he will not, in the absence of paramount equities, be held to have subordinated his security to an intervening lien—whether mortgage, vendor, mechanic, or judgment—unless this appears to have been his intention." *Shanks v. Phillips*, 165 Tenn. 401 at page 405, 55 S.W.(2d), 258, 260, citing notation in 33 A.L.R., 149.

It is seen that the cited case is not controlling in the present case.

Nevertheless, appellant urges that the Johnsons were the equitable owners of the land under their purchase contract and that they conspired with Commerce Union to defeat the rights of Third National "so that

Commerce Union could pass clear title to the Johnsons."

 No conspiracy was necessary. A prospective purchaser has every right to require the title to land to be cleared before purchase. A holder of a prior mortgage has every right to exercise all of the powers granted in the mortgage in order to perfect a title acceptable to a prospective customer and thereby realize upon the security for the debt. The exercise of such rights is no conspiracy. It is the nature of the infirmity of a junior mortgage or lien that it may be extinguished in the enforcement of a superior mortgage or lien.

Appellant cites authorities that purchase at foreclosure by one cotenant is for the benefit of all tenants. The principle has no application to the present facts.

Appellant seeks to connect the Johnsons and Commerce Union in some sort of relationship whereby the bank was acting as the alter ego of the Johnsons in the purchase of the property. The facts simply do not support such an assumption. Commerce Union was acting in its own interest to acquire and to clear the title to property on which it had three mortgages, so that the land might be sold to satisfy the claims of the bank.

 Appellant next argues that the McCords were benefitted by the foreclosure sale to defeat the lien of Third National. It is true that, when a holder of a mortgage enforces his debt by foreclosure, the debtor benefits to the extent of the reduction or satisfaction of the debt. However, a debtor to a junior lienor is not benefitted by the elimination of the junior lien, because the debtor remains liable for his unsatisfied debt to the junior lienor.

Appellant relies upon authorities wherein the debtor purchased his own property at a tax sale to defeat other liens on the property, but the facts of this case have no relation to tax sales or purchases by a debtor.

Finally, appellant argues as follows:

It is not disputed that the Johnsons paid Commerce Union Bank $110,000.00 for the McCord property. The Deed of Trust of First Tennessee Bank at maximum could secure only the sum of $64,-800.00. (R. p. 74–77) However, the exact balance is not known. Mr. Newbill had no way to compute the balance due on the note that Commerce Union Bank purchased from First Tennessee. (Newbill deposition, pp. 7 and 34) The commerce Union Bank second deed of trust at most secured $32,500.00 (R. pp. 71–72, Exhibit 6 to Newbill deposition) making a total possible maximum secured amount of $97,300.00. Admittedly the property sold at the foreclosure sale for $36,-500.00. The deed of trust under which it sold, only secured $32,500.00 leaving $4,000.00 unexplained. At the foreclosure sale Commerce Union Bank had a contract to sell the house for $110,000.00 but only made a bid which, when added to the maximum possible outstanding first mortgage of $64,800.00, made an aggregate price of $97,300.00 or $12,-700.00 less than the known sale price.

It is true, as insisted by appellant, that this record is deficient in certain details, especially the amount due upon the various claims at the time of the foreclosure and the application of the proceeds of the sale. However, sufficient details are in the record to conclusively exclude appellant from participation in the proceeds of the foreclosure sale or the subsequent private sale to the Johnsons.

At the time of the foreclosure sale, the principal amount of the $64,800 first mortgage was outstanding, but it was not involved in the foreclosure or proceeds because the property was sold subject to the prior mortgage of $64,800 which remained a first lien on the property even after the sale of the equity of the McCords in the property.

The foreclosure sale was held to satisfy the $32,500 second mortgage to Commerce Union Bank. The amount of accrued interest, fees and expenses of sale is not shown. Thus, the $36,500 sale price did produce a surplus of $4,000 over the principal amount to be satisfied.

With respect to the rights of junior encumbrances entitled to the surplus, it is generally held that the senior mortgagee, realizing more than his debt at a foreclosure sale is to be regarded as trustee for their benefit. 59 C.J.S. *Mortgages*, § 596, p. 1034.

It is axiomatic that the rights of successive junior lien holders are in their order of priority. That is, as between two successive junior lien holders, the prior junior lien holder is entitled to satisfaction in full before any payment to a lien holder of lesser priority.

In the present case, Commerce Union chose to foreclose on its September, 1981 mortgage of $32,500.

The next junior lien on the property was the November 1982 trust deed securing the increase from $32,500 to $42,161.91 an increase of $9,661.91.

Thus, after satisfaction of the 1981 debt of $32,500, the next debt in priority was the 1982 debt of $9,661.91 due Commerce Union. By priority of time, it was entitled to satisfaction before any payment to Third National on its 1983 lien.

In other words, if there was a $4,000 surplus from foreclosure, Commerce Union was entitled to apply it as a credit on the next in priority among liens, the 1982 mortgage of $9,661.91, which would exhaust the $4,000 surplus and leave nothing for Third National on its 1983 lien.

When property is sold at foreclosure, the purchase price is substituted for the debtor's interest in the property, and the purchaser takes debtor's interest in the property free of any liens junior to the lien being enforced by foreclosure.

The holder of the senior mortgage, who has purchased the property for the amount of his debt is not required to surrender the property to a junior encumbrancer on receipt of the amount of his claim. 59 C.J.S. *Mortgages*, § 502, p. 1015.

Accordingly, the mortgagee who has bid more than his debt is required only to account for the disposition of the surplus of his bid over his debt, and not for any amount received from a future sale of the property to others. That is to say, Commerce Union is not accountable to Third National for any surplus of the amount received from the sale to the Johnsons. Even if Commerce Union derived a profit on the sale after satisfying all debts due Commerce Union, this would be immaterial, for a purchaser at foreclosure is entitled to sell at a profit if he can do so.

In any event, the uncontradicted evidence shows that the amount received from the Johnsons ($110,000) was less than the total of the mortgage liens held by Commerce Union ($112,354), all of which were prior in time to the lien of Third National.

Thus, by any measure, there was no surplus for application to the debt of Third National.

No merit is found in any of the arguments made on behalf of appellant.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against appellant. The cause is remanded to the Trial Court for collection of costs and any other proceedings which may be necessary and proper.

Affirmed and Remanded.

CANTRELL and KOCH, JJ., concur.