## BANTA v. GARMO and others.

B. loaned money to G. to pay off a mortgage, on the security of a new mortgage on the same lands. The old mortgage was paid off, and a discharge of the same duly executed. W. recovered a judgment against G., which was docketed after the first mortgage, and on which the lands were sold to him by the sheriff, prior to the mortgage to B. This sale was overlooked in B.'s examination of the records for liens.

*Held,* that B. was not entitled to be subrogated to the old mortgage, or to set it up in order to give him a lien prior to the judgment and sheriff's sale.

March 12; March 30, 1844.

THE bill was filed to foreclose a mortgage executed by Garmo to Banta, and for relief, if necessary, upon a prior mortgage.

The facts shown by the pleadings and proofs were as follows:

On the 12th of January, 1831, Garmo executed a mortgage to the County Clerk for $2100 with interest at six per cent. The money being called for, Garmo negotiated a loan for $2200 from Banta at seven per cent. in order to pay off the mortgage.

The loan was made, and on the 25th of July, 1838, Garmo gave to Banta the bond and mortgage in question, on the same lands which were included in the mortgage to the county clerk. The latter mortgage was paid off with the money thus loaned, and a discharge of the same was executed and acknowledged by the county clerk, and left at the Register's office to be recorded; but it was not recorded through some neglect or inadvertence.

On the 15th of September, 1837, the defendants, West and Van Brunt, recovered a judgment against Garmo, on which an execution issued, and the lands mortgaged were sold thereon by the sheriff, on the 17th of February, 1838. The sheriff gave the usual certificate, and filed a duplicate, and he returned the execution as being satisfied. An entry of such satisfaction was made by the clerk in the docket of judgments.

When Banta made the loan, his solicitor examined the title, and directed a search for judgments against Garmo. The certificate of the result of the search, exhibited the judgment of West and Van Brunt, as being satisfied on execution. No search was made for sheriff's certificates, and the solicitor believing the title to be unincumbered, so advised Banta, and upon such advice he made the loan.

After the period for redemption expired, the sheriff, on the 21st of July, 1839, conveyed the lands sold on the execution, to West and Van Brunt.

Banta, on learning of the judgment and sale, claimed a right to set up the mortgage to the county clerk, and to be subrogated to the same, as against the intervening judgment.

The cause was heard on pleadings and proofs.

*J. Prescott Hall*, for the complainant.

*P. A. Cowdrey*, for the defendants; West and Van Brunt.

THE ASSISTANT VICE-CHANCELLOR.—This is a case of great hardship on the part of the complainant, but it is not in the power of this court to relieve him.

The money was borrowed by Garmo, to pay off the prior mortgage. In order to secure the loan, he executed a new mortgage, for a larger principal sum, and upon a different rate of interest. The money was paid in discharge of the first mortgage, with the express and avowed intention of cancelling it. The holder of it executed a satisfaction piece. Something intervened to prevent the satisfaction from being recorded and entered; but it was not withheld by the parties. The mortgage was paid and extinguished, as effectually as was possible by the acts and intentions of all concerned. No one would ever have thought of resuscitating it, but for the discovery of the defendant's title under their judgment. This was not discovered by the complainant's solicitor, who superintended the loan, for the reason that his certificate obtained on a search for judgments, exhibited their judgment as being satisfied on execution; and he did not search for sheriff's certificates, where the defendant's title would have duly appeared.

The attempt is now made to subrogate the complainant to the rights which the first mortgagee had, and thus give to him a lien prior to the defendants.

In *Sanford* v. *M'Lean*, (3 Paige's R. 122,) the Chancellor says, "If the complainant had actually advanced the money to pay off those judgments, it is doubtful whether he would have been equitably entitled to be substituted in their place, without some conventional arrangement to that effect with those creditors. It is only in cases where a person advancing money to pay the debt of a third party, stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity substitutes him in the place of the creditor, as a mat-

ter of course, without any agreement to that effect. In other cases, the demand of a creditor, which is paid with the money of a third person, and without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, *is absolutely extinguished.*" And see *James* v. *Morey,* (6 J. C. R. 417, and 2 Cowen's R. 246, on appeal.)

The case of *Marvin* v. *Vedder,* (5 Cowen, 671,) is a strong authority in our highest court, against giving vitality to this mortgage. It was there decided that the delivery of money by the mortgagor to the mortgagee, with *an intention* to pay it on the mortgage, operated as a payment, without any receipt, or in-dorsement on the security, although within a few days after, the mortgagee returned it to the mortgagor, under an agreement that it should not apply as a payment, but that it should remain out-standing on the mortgage. In that case the point was decided in behalf of a judgment creditor whose lien attached subsequent to the mortgage, but prior to the payment. If the mortgagee himself would have no right to revive his lien in such a case, it needs no argument to show that a third person advancing the payment on the faith of another security, would have no such right.

A further argument is made in behalf of the complainant, on the ground of mistake in cancelling the prior mortgage. This is not strictly the fact, as that act was done intentionally, and the mortgagee in that mortgage is content. The mistake con-sisted in the belief that the complainant was acquiring an unin-cumbered title by his mortgage. This kind of mistake is of frequent occurrence, but I never heard of an instance where the suffering lender was permitted to trace back his money into the hands of a stranger who had received it in discharge of an elder lien than the one newly discovered, and thereupon to set up such stranger's lien to overreach the intervening incum-brance. The adjudged cases relied upon, where parties were allowed to have relief upon instruments delivered up in igno-rance of facts; were all cases in which the right was revived in behalf of the parties who had delivered up those instruments under such mistake. No case can be found where a third person after voluntarily and intentionally discharging a lien in which

he had no prior interest, and on the faith of another security, has been permitted as against other incumbrancers, to revive such lien, on ascertaining that his own security was worthless. And if the question were open, I should at once say that the evils which would flow from the adoption of such a principle, would far overbalance the hardship of particular cases which occur under the rule of law as now settled.

The bill must be dismissed with costs, as to West and Van Brunt.