## BRIDGES v. COOPER.

### (*Nashville.*    March 18, 1897.)

1. LIEN.    *Of judgment creditor upon debtor's equity of redemption.*

   A judgment creditor acquires a lien upon his debtor's equity of redemption in mortgaged lands from the date of his filing bill to foreclose the mortgage and subject the equity to the payment of his debt; and this lien expands to embrace and subject to sale any enlargement of the debtor's interest to the extent of the entire fee resulting from payment in part or a full discharge of the mortgage debt made pending the suit. (*Post, pp. 384, 385.*)

   Code construed: §§ 6091, 6095 (S.); §§ 5025, 5029 (M. & V.); §§ 4282, 4286 (T. & S.).

   Cases cited and approved: Fulghum *v.* Cotton, 6 Lea, 591; Schultz *v.* Blackford, 9 Lea, 431.

2. MORTGAGES AND DEEDS OF TRUST.    *Release and loss of priority.*

   A mortgagee, who, with knowledge that the mortgagor's judgment creditor had filed bill and secured lien upon the equity of redemption, releases the mortgage absolutely, to enable the mortgagor to sell and convey the property, upon an agreement that the notes for the purchase price, secured by a vendor's lien, are to be transferred to him in place of the mortgage, loses his right to priority of satisfaction over the judgment creditor out of the property or its proceeds, especially where the release and conveyance are not simultaneous, and there was no agreement at the time to keep the mortgage alive. (*Post, pp. 384–393.*)

   Cases cited: Belcher *v.* Wickersham, 9 Bax., 121; 73 Ind., 425; 73 Iowa, 555 (S. C., 5 Am. St. Rep., 701); 13 Col., 513, 526; 31 N. J. Eq., 205; 92 Col., 229, 493; 67 Mo., 434; 9 Gill., 185 (S. C., 52 Am. Dec., 691); 1 Sand. Ch., 383; 29 Md., 178; 38 Md., 271; 20 Ill., 54;

34 Mo., 639; 39 Md., 409; 15 Pet., 21; 14 Mass., 351; 101 Mass., 426; 31 Grattan, 791; 50 Ark., 108.

---

FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County. H. H. Cook, Ch.

H. H. Barr and Hughes & Hatcher for Bridges.

Granbery & Marks and E. S. Scruggs for Cooper.

Caldwell, J. Cooper, the owner, mortgaged certain land in Davidson County, Tennessee, to one Rinaldi, of Florida, to secure the payment of a debt of $7,500, and the mortgage was put to record. Some time thereafter Bridges and Henderson filed their bill in the Chancery Court of Davidson County against proper parties, and with appropriate allegations, to foreclose the mortgage and subject Cooper's equity in the land to the payment of a judgment recovered by them against him in the Circuit Court of Maury County, and on which an execution had been issued and returned *nulla bona.* Upon the failure of Cooper and Rinaldi to make defense, the bill was taken for confessed, and the cause set for hearing *ex parte* as to them. In the orderly progress of the cause, and according to the prayer of the

bill and correct practice, a reference was made to ascertain how much of the mortgage debt remained unpaid. The proof taken under the reference disclosed the fact that Rinaldi, on January 26, 1892, some five months after the filing of the bill, executed and delivered to Cooper a written release and quitclaim, wherein, after suitable reference to the mortgage, it was recited that, "in so far as the property herein described is concerned, the debt so secured has been fully satisfied and discharged," and that in consideration thereof Rinaldi did "bargain, sell, convey, and forever quitclaim," to Cooper, "all right, title, and interest of every nature and kind in and to the property described in said mortgage." It was also shown in the proof that Rinaldi's debt, though largely reduced, had not in fact been fully paid; that he executed the release and quitclaim at the request of Cooper, and on his promise that when he sold the land, as was then contemplated, he would transfer to Rinaldi the purchase money notes, with a lien to be expressly reserved in the deed, such notes so secured to be held by Rinaldi in the place of the mortgage; that after clearing his title to that extent, by registration of the release and quitclaim, Cooper consummated the sale of the land, on February 26, 1892, to one Hainey, taking his notes for purchase money, and retaining an express lien to secure their payment; that, subsequently, Cooper, in compliance with his promise, transferred those notes to Rinaldi as collateral security, and that they re-

mained unpaid.    The Chancellor, on final hearing, ad-
judged that the mortgage had been released and satis-
fied, and, consequently, that the land should be sold,
not as in case of foreclosure, but for the benefit of
the complainants in the first instance.    His decree
was affirmed by the Court of Chancery Appeals, and
from that affirmance Rinaldi has appealed to this
Court.

1.    Beyond debate or doubt, the complainants ac-
quired a lien on Cooper's equity in the land from
the filing of their bill; and, the mortgage having
matured, they were, in any event, entitled at least
to a foreclosure of the mortgage by an absolute sale
of the fee in the land.    Code, §§ 4282, 4286; (M.
& V.), §§ 5025, 5029; (Shannon), §§ 6091, 6095;
*Fulghum* v. *Cotton*, 6 Lea, 591; *Schultz* v. *Black-
ford*, 9 Lea, 431.

2.    Such a lien covers the whole of the debtor's
interest in the land, and expands from time to time,
in scope and value, as his interest may be enlarged
by successive payments of the mortgage debt; and,
finally, it embraces the whole estate when total ex-
tinguishment of the incumbrance has been accom-
plished.    From the beginning to the end the lien
is commensurate with the debtor's interest.

It follows, therefore, that these complainants, who,
at all events, were entitled to an absolute sale of
the land, and have rightfully obtained that relief,
were likewise entitled to the whole of the net pro-
ceeds, or a sufficiency thereof to satisfy their judg-

ment in full; provided only that Rinaldi's release and quitclaim operated in law as a complete discharge of the mortgage for all purposes and as to all persons.

3. What, then, was the legal effect of the release and quitclaim upon the relative rights of Rinaldi and the complainants?

Applying the general rule that written instruments take effect according to the expressed intention of the parties thereto, it is easy to discover that this mortgage was completely discharged and extinguished. The relation of mortgagor and mortgagee, between Cooper and Rinaldi, was effectually dissolved, though that of creditor and debtor was not ended. The debt was "fully satisfied and discharged," so far as the mortgaged realty was concerned, and "all right, title, and interest of every nature and kind in the property" were by Rinaldi reconveyed to Cooper. This was rightly understood to be indispensable to enable Cooper to make Hainey, his proposed vendee, a good title, and it was done deliberately, with that end in view.

The effect was to annihilate the mortgage, not only as to Cooper, Rinaldi, and Hainey, but also as to these complainants. Having no further vitality between the mortgagor and mortgagee, it could certainly have none between the mortgagee and the mortgagor's creditors.

But it is said in behalf of Rinaldi, that his lien, as holder of the Hainey notes, is, nevertheless, supe-

14 P—25

rior to that of the complainants because these notes, when executed, were, by agreement made at the time of the release and quitclaim, substituted for the mortgage. His counsel assimilate this case to that of a new mortgage executed in renewal of an old one, and cite several cases, those most in point being *Walters* v. *Walters*, 73 Ind., 425; *Young* v. *Shaner*, 73 Iowa, 555( S. C., 5 Am. St. Rep., 701); *Swift* v. *Kreamer*, 13 Cal., 526.

The first of these cases is well stated in the headnote, as follows: "The taking of a new note and mortgage by the mortgagee, for the same debt, upon the same land, will not discharge the lien of the first mortgage, but the lien thereof will be continued in the new mortgage. But if the new note and mortgage were taken as a payment and satisfaction of the first, or if they were given in settlement of mutual running accounts, of which the first mortgage debt was only a part, the rule would be otherwise." 73 Ind., 425. The second one is digested by Mr. Freeman, thus: "New mortgage is renewal of the old one to the extent of old mortgage debt, and takes precedence of a lien of judgment obtained after the old mortgage was given and before the new mortgage was executed, where it appears that the mortgagee under the second mortgage was also the mortgagee under the first mortgage; that both he and the mortgagor were ignorant of the existence of the judgment, and that he would not have advanced the money on the second mort-

gage and canceled the old one had he known of the judgment lien.'' 5 Am. St. Rep., 701. In the last of the three cases a new mortgage was executed to persons, paying off old ones, upon their being released on the same day; and the Court held the transaction to be an assignment of the old mortgages for money advanced by the new mortgagees— a simple changing of the form of the old incumbrance, and not the creation of a new one. 13 Cal., 526.

To these may be added the case of *Hutchinson v. Swartsweller*, wherein it was ruled that the acceptance of a new mortgage instead of an old one would not deprive the mortgagee of the lien of the old mortgage against an intervening lien, of which he was ignorant at the time of the exchange. 31 N. J. Eq., 205–207.

None of these cases are very close akin to this one, for here Rinaldi, the releasing mortgagee, took no second mortgage at all; and the most of them are otherwise essentially different from this one, in that the release of the first mortgage and the execution of the second mortgage, therein considered, were simultaneous, and the release was made in ignorance of any intervening right. Furthermore, it is easy to find a larger number of well-considered cases holding that the release of a first mortgage, and acceptance of a second one in its stead, extinguishes the first mortgage forever and gives priority to intervening claimants, in the absence of fraud,

accident, or mistake. See *Dingman* v. *Randall,* 13 Cal., 513; *Miller* v. *Hicken,* 92 Cal., 229; *Richards* v. *Griffith, Ib.,* 493; *Anglade* v. *St. Auit,* 67 Mo., 434; *Wallen* v. *Hillen,* 9 Gill (Md.), 185 (S. C., 52 Am. Dec., 691, note, 693); *Banta* v. *Garmo,* 1 Sand. Ch., 383; *Neidig* v. *Whiteford,* 29 Md., 178; *Henisler* v. *Nickum,* 38 Md., 271. Other cases on each side of the question are cited in note, 5 Am. St. Rep., 705.

Jones says: "When a mortgage is discharged and a new one taken as part of one transaction, the seizin between the release and the new mortgage is but momentary, and will not admit of any right or interest of the mortgagor under the homestead Act to intervene; nor would such a seizin give his wife a right of dower. Neither the mortgagor nor his heirs can claim that the original mortgage was extinguished and the new mortgage substituted in its place, unless such appears to have been the intention of both parties. But as regards intervening liens of third persons, a release of the original mortgage and the taking of a new one would naturally let them into a position of priority to the new mortgage, and it requires very clear evidence of fraud, accident, or mistake, to induce a Court of Equity to interfere to prevent this result." 1 Jones on Mort. (5th Ed.), Sec. 927*a*. And again: "When a new mortgage is substituted in ignorance of an intervening lien, the mortgage released through mistake may be restored in equity and given its original

priority as a lien. . This was done in a case where the holder of a first mortgage, in ignorance of the existence of a subsequent one on the premises, released his mortgage and took a new one. . . . A Court of Equity will grant relief on the ground of mistake, not only when the mistake is expressly proved, but also when it is implied from the nature of the transaction. . . . If money is borrowed on a mortgage for the purpose of paying off a former mortgage of the same land, the fact that an intervening judgment lien was overlooked in examining the title will not enable the mortgagee to set up in equity the former mortgage after it has been duly discharged." *Ib.*, Sec. 971.

Three points should be observed in connection with these statements of the author—first, the release in the present case was made and recorded one month before the execution of the deed to Hainey and the delivery of his notes to Rinaldi; second, no fraud, accident, or mistake is shown or to be implied; third, in the absence of fraud, accident, or mistake, intervening lienors or mortgagees will have precedence over the original and released mortgagee.

Cases involving rights under mortgages to secure purchase money for land have been very fruitful in illustration of the general doctrine that contemporaneous instruments are to be given effect as parts of one and the same transaction.

In *Curtis* v. *Root*, 20 Ill., 54, the Court said: "It is a principle of law too familiar to justify a

reference to the authorities, that a mortgage given for the purchase money of land, and executed at the same time the deed is executed to the mortgagor, takes precedence of a judgment against the mortgagor. The execution of the deed and of the mortgage being simultaneous acts, the title to the land does not for a single moment rest in the purchaser, but merely passes through his hands and vests in the mortgagee, without stopping at all in the purchaser, and during this instantaneous passage the judgment lien cannot attach to the title.''

Familiar as the principle is, however, it is not to be applied beyond its scope. To be operative as parts of a single transaction, the different instruments must take effect at the same time. Simultaneity is absolutely essential in every instance. *Rawlings* v. *Lowndes,* 34 Md., 639; *Henisler* v. *Nickum,* 38 Md., 271; *Ahern* v. *White,* 39 Md., 409; *Mayburry* v. *Brien,* 15 Peters, 21; *Clark* v. *Monroe,* 14 Mass., 351; *Burns* v. *Thayer,* 101 Mass., 426; *Summers* v. *Drane,* 31 Grattan, 791; *Cohn* v. *Hoffman,* 50 Ark., 108; 4 Kent, * 38, * 39.

As to this, Jones observes: ''A mortgage for purchase money, to be entitled to preference, must be executed simultaneously with the deed of conveyance. If an interval of time is left between the transactions, during which the interest of the purchaser is liable to be seized on execution upon the judgment, this preference is lost, and the judgment is entitled to priority. If the in-

struments are delivered at the same time, it does not matter that they were executed on different days, because they take effect only from the delivery." 1 Jones on Mort., Sec. 469. "If there be an interval of time between the purchase and the making of a mortgage to secure the purchase money, the wife is not barred of her right of dower by reason of any recitals made by the husband in the mortgage deed, in which the wife does not join. In such case, also, a judgment rendered against the grantee prior to the purchase takes precedence of the mortgage." *Ib.*, Sec. 473.

Rinaldi's release and quitclaim of his mortgage, and Cooper's deed to Hainey, took effect thirty days apart, and not simultaneously; hence, they cannot be treated as parts of a single transaction, so as thereby to couple the lien of the Hainey notes with the mortgage, and override the intervening rights. Besides, there is no intention to keep the mortgage alive for any purpose, and, without such an intention at the time of the release and quitclaim, the mortgage became extinguished forever and as to everybody, in the absence of fraud, accident, or mistake. An *ex post facto* intention will not suffice. *Belcher* v. *Wickersham*, 9 Bax., 121.

Rinaldi intended to relinquish, unconditionally and absolutely, all his rights under the mortgage, so that Cooper, the mortgagor, could sell the land discharged from that incumbrance; and he expected, thereafter, to have no other rights against the land than such

as Cooper, the intended vendor, would have by reason of his lien for unpaid purchase money. After the execution of the release and quitclaim, Cooper held the land discharged from the mortgage, but subject to the lien of complainants; and, by his deed, he passed the land to Hainey free from the mortgage, but incumbered by that lien. As against Cooper and Hainey, that lien is a prior charge on the land—neither of them could avoid it—and being prior as to them, it is inevitably so as to Rinaldi, whose only subsisting claim against the land is due to his ownership of the purchase money notes. As transferee of these notes, Rinaldi stands upon exactly the same plane as that occupied by Cooper at the time of the transfer. Cooper then had a vendor's lien on the land, but the lien of complainants was entitled to prior satisfaction; his lien embraced all his deed passed to Hainey, but that deed passed the land subject to the lien of complainants. Cooper's transfer conferred upon Rinaldi such rights as he himself had, no more, no less. His rights were subordinate to those of complainants; consequently, the rights of Rinaldi are likewise subordinate.

It is worthy of repetition that Rinaldi made his release and quitclaim to enable Cooper to sell the land; and that he did so with no thought, expectation, or promise that he should ever thereafter have any claim against the land, other than the express lien to be retained by Cooper in his own behalf. As expected and promised, this lien was in good

faith assigned to Rinaldi with the notes of the ven-
dee, and he is now accorded the full benefit of it.
But he is entitled to nothing as mortgagee. It
would be a strange thing indeed, to find or hold
that a mortgage, confessedly dead as to the mort-
gagor, is alive as to his creditors.

Affirmed.