## BANK *v.* SMITH.

### (*Jackson.* June 24, 1901.)

1. MORTGAGES AND DEEDS OF TRUST. *Assignment of secured notes passes lien.*

   Doctrine reaffirmed that the lien of a mortgage or deed of trust passes, without special assignment thereof, to the indorsee or transferee of the note or debt secured. (*Post, p. 483.*)

   Cases cited: Clark *v.* Jones, 93 Tenn., 639.

2. SAME. *If barred, sale under void.*

   A sale made by the trustee under and pursuant to a deed of trust, after its lien is barred by the statute of ten years, is absolutely void and imparts no title to the purchaser. (*Post, p. 483.*)

3. SAME. *Not saved from bar by renewal, when.*

   A mortgage or deed of trust cannot be saved from the bar of the statute of ten years and its lien preserved as against subsequent intermediate incumbrances, by any sort of new promise or renewal contract between the maker and beneficiary, though entered into before the bar of the statute had attached. After the lapse of ten years from the date of the maturity of the secured debt the bar of the statute, if not prevented by appropriate proceedings for foreclosure, becomes complete and absolute. (*Post, pp. 483, 484.*)

   Act construed: Acts 1885, Ch. 9.

   Code construed: § 4464 (S.).

   Cases cited; McElwee *v.* McElwee, 97 Tenn., 649; Runnells *v.* Jacobs, 100 Tenn., 397.

4. SAME. *Extinguished pro tanto.*

   The assignee of a debt secured by a mortgage having priority, who takes the assignment merely as security for money advanced at the instance and for the benefit of the maker, or of a volunteer named by him, cannot, as against a subsequent lienor, enforce the mortgage for a larger amount than was actually advanced, with interest. (*Post p. 484.*)

Bank *v.* Smith.

5. COLLATERAL SECURITY. *Effect of payment of debt.*
  The payment or cancelation of the principal debt *ipso facto* ter-
    minates the creditor's interest in collaterals deposited for its
    security. (*Post, pp. 484, 485.*)

FROM SHELBY.

Appeal from Chancery Court of Shelby County.
F. H. HEISKELL, Ch.

METCALF & METCALF and TURLEY & TURLEY for
Bank.

McFARLAND & NEBLETT and W. W. GOODWIN,
W. A. COLLIER, and MALONE & MALONE for Smith.

CALDWELL, J. On July 27, 1886, W. A. Col-
lier and Alice T. Collier, his wife, executed a deed
of trust on 203 acres of land, near the city of
Memphis, to William M. Smith and John P. Hous-
ton, trustees, to secure an indebtedness of $7,513.10
to Henry T. Ellett. That indebtedness was evidenced
by the promissory note of Collier and wife, matur-
ing September 30, 1886, and the conveyance was
promptly registered.

November 2, 1892, the same grantors executed
another deed of trust on the same land to Smith &
Guion, trustees, with the view of securing to the
Union & Planters' Bank a large indebtedness, con-

sisting of three notes for $5,500 each, and two other notes aggregating about $5,000. One of the three $5,500 notes was indorsed by John P. McCallum, one by Joseph Haines, and the other by Casey Young. This instrument was registered likewise.

Henry T. Ellett died and his widow became the owner of his note and security. She was about to have the first deed of trust foreclosed, when, on June 29, 1894, Collier and wife induced Mrs. Fannie A. Wheeless, a widow, to purchase the debt and lien of Mrs. Ellett, and grant further indulgence. Besides the transfer by Mrs. Ellett of her note and security, Mrs. Wheeless, on the day last mentioned, received from Collier and wife a written instrument reciting the facts of the transaction, acknowledging Mrs. Wheeless as their creditor and as the beneficiary under the first deed of trust, providing that the land "shall stand as security" to her "to the same extent and effect as originally intended for the said note" to Henry T. Ellett, stipulating for one year's additional indulgence, agreeing to pay reasonable attorney's fees for the necessary protection or enforcement of her rights, binding Mrs. Collier's separate estate secondarily, etc.

On ·February 21, 1895, John F. McCallum, "in payment of the ($5,500) note indorsed by him," executed to the bank his individual note for $5,714.15, pledging the note so paid as collateral for the note so executed. At the same time Joseph Haines and Casey Young each took precisely the same course with

the other two $5,500 notes, indorsed by them respectively, and thereafter the bank held the six notes. Mrs. Wheeless, in fact, indulged her debtors until February 14, 1898, when the trustees, at her instance, sold the land under the first deed of trust, and she, being the highest bidder, became the purchaser, at the price of $9,000, about the amount of her debt.

On that day the Union and Planters' Bank, the beneficiary under the second deed of trust, filed the original bill in this cause, to prevent the sale and to foreclose the second deed of trust for its own benefit. The injunction was too late to arrest the sale, but it was in time to restrain the execution of the deed. By consent, however, the deed was afterwards delivered, subject to the final decree to be made in the cause.

The theory of the bank's bill is that the first deed of trust was barred and its lien extinguished absolutely by the ten years' statute of limitations (Acts 1885, Ch. 9), and that, as a consequence, the second deed of trust became operative as a prior charge on the land in favor of the bank as beneficiary. Mrs. Wheeless, by answer, denied the bank's contention as to the law of the case *in toto*, and, by cross bill, asserted priority in herself as owner of the Ellett debt and deed of trust, and by virtue of the instrument executed to her by Collier and wife at the time she became such owner.

Thereafter, with a view of diminishing or ending this litigation, W. A. Collier undertook an adjustment of all the debts mentioned in the second deed.

The time · was opportune, for his indorsers had sued the bank for large amounts of usury asking that they be credited on those debts or some of them, and there may have existed some other claim of equities in his favor. The bank agreed to satisfy or transfer all of those debts, which with interest to that time aggregated nearly six times as much, for $5,000.

This latter sum, Mr. C. W. Metcalf, a distinguished lawyer and personal friend of W. A. Collier, was ready to furnish for the purpose indicated; but, as he was unwilling to make the advance to Collier himself, the latter's son, Thos. B. Collier, a young gentleman then in college was requested to take the matter up in his own name. He agreed to do so, but being without money, Mr. Metcalf furnished him the $5,000 for the bank, and it executed a written transfer of those several debts. This instrument, however, through a misunderstanding on the part of the bank's attorney, named C. W. Metcalf instead of Thos. B. Collier as transferee, when in fact it was intended by them that the legal title to the notes should be vested in the latter of these gentlemen, and that the former should hold them only as collateral security; but ,rather than have the instrument reformed they agreed be-

tween themselves that Metcalf should hold the legal title thereby transferred to him, first as security for the $5,000 he had advanced and then as trustee for Thos. B. Collier.

Subsequently they, by appropriate pleadings and orders, became parties to this cause, and it proceeded thenceforth with them as complainants, in the right of the bank and in its room and stead. Mrs. Wheeless, by amended cross bill, attacked the bank's transfer, charging that the transaction was, in reality, a purchase of his own debts by W. A. Collier, and, therefore, a complete satisfaction of them and an extinguishment of the bank's deed of trust. This charge was denied.

After the bank's transfer to Metcalf, he, by direction of Thomas B. Collier, surrendered to John P. McCallum and to Joseph Haines, respectively, without payment, their respective individual notes for $5,714.15 each, but retained, as supposed living obligations, the two original $5,500 notes which they, as indorsers, had taken up from the bank and deposited with it as security for those individual notes.

Hearing the case finally on all of the pleadings and full proof, the Chancellor adjudged, in effect, that the first, or Ellett, deed of trust was barred and extinguished by the ten years' statute, invoked by the bank and its successors in interest, and, therefore, that the sale thereunder by the trustees therein, and their deed to Mrs. Wheeless, as purchaser, were void; that the second, or the bank's,

23 p—31

deed of trust was effective as a prior charge on the
land in favor of Thomas B. Collier, as owner of
the bank's debts; that the instrument executed by
W. A. Collier and wife to Mrs. Wheeless, at the
time she purchased the Ellett note, gave her only
an interest in the land, subordinate to that of the
bank under its deed of trust, created a charge on
Mrs. Collier's separate estate for that note, and
bound that estate and W. A. Collier for the payment
of any reasonable attorney's fee incurred by Mrs.
Wheeless in the matter. Thereupon, the Court or-
dered that the 203 acres of land be sold, and that
the proceeds be applied, primarily, in payment of
Thomas B. Collier's debts, aggregating $31,315.37
(the first $5,687.50 thereof to be paid to C. W. Met-
calf in satisfaction of his loan), and, secondarily, in
payment of the debt of Mrs. Wheeless for $10,990.
It was also ordered that certain parts of the sep-
arate estate of Mrs. Collier be thereafter sold, if
necessary, to pay any unpaid balance due to Mrs.
Wheeless, and that W. A. Collier and wife pay
$1,000 as a fee to the counsel of Mrs. Wheeless.
Collier and wife and Mrs. Wheeless took special
appeals from certain parts of the decree that were
adverse to their respective interests.

We will not discuss or formally state the several
assignments of error, but will content ourselves with
a brief statement of our conclusions on a few con-
trolling questions.

Bank *v.* Smith.

1. It is well settled in this State that the lien of a deed of trust passes, without special assignment thereof, to the indorsee or transferee of the note or debt secured. *Clark* v. *Jones*, 93 Tenn., 638.

2. The lien of the first, or Ellett deed of trust, was "barred" and "discharged" by the lapse of more than ten years between the maturity of the secured note and the sale by the trustees. Acts 1885, Ch. 9, Sec. 1; Shan., 4464; *McElwee* v. *McElwee*, 97 Tenn., 649; *Runnels* v. *Jacobs*, 100 Tenn., 397. Hence that sale and the deed by the trustees passed no title. It matters not that W. A. Collier and wife may have intended the paper executed by them to Mrs. Wheless as a renewal of the Ellett deed of trust, and that she may have so understood it, for no language that could have been employed would have extended the life of that deed of trust, especially as against intermediate lienors, beyond the period of ten years from the maturity of the Ellett note. The statute is plain, positive, and unyielding on this point.

3. That paper, though dependent for a description of the land upon the Ellett deed of trust, was in law effective as a new conveyance, from its date and delivery as to the makers, and from its registration, the day after the commencement of this suit, as to all other persons. Mrs. Wheless, as the owner of the Ellett note, might have foreclosed the Ellett deed of trust by a sale of the land at any

time within ten years, but by failing to do that she lost her priority and was left to stand alone upon the conveyance to herself, which, being subsequent in point of time, was subordinate in right to the bank's deed of trust.

4. That deed of trust, however, has been preserved, as against the conveyance of the same property to Mrs. Wheeless, only to the extent of $5,000 actually paid through Mr. Metcalf for the bank's debts. Thomas B. Collier's purchase of those debts under the circumstances mentioned was, as against that conveyance, of which he had full notice, a satisfaction of the bank's deed of trust except as to the amount paid, his purchase, as against Mrs. Wheless, being tantamount to a like purchase (with legal title to Mr. Metcalf as security) by his father, who owed the debts, arranged the details, and brought him into the transaction. No one in such relation and with such notice, making such a purchase, under such circumstances, will, in equity, be allowed priority beyond the amount of the outlay actually made, with interest.

5. Mr. Metcalf, who advanced the $5,000 and received the transfer in the manner heretofore recited, is entitled in his own right, or through Thomas B. Collier, to have the bank's deed of trust foreclosed for his reimbursement, and that is the full extent to which the priority of that instrument has been preserved as against the conveyance to Mrs. Wheeless.

6. As against W. A. Collier, the debtor, who

Bank *v.* Smith.

induced his son to purchase the bank's debts, it may be conceded that the son thereby became entitled to claim the whole of that indebtedness and to foreclose the bank's deed of trust for its payment; nevertheless, the voluntary surrender by Thos. B. Collier, the son, of the two individual notes of McCallum and Haines for $5,714.15 each operated as a release to them of the two original notes for $5,500.00 each, deposited as collateral security therefor, and to that extent, even as against his father, decreased the indebtedness he had purchased from the bank and his lien under the bank's deed of trust. The payment or cancellation of the principal debt *ipso facto* terminates the creditor's interest in the collateral.

7. The fee allowed to the attorney of Mrs. Wheeless is justified by the proof.

Modify decree of Court below and enter one here in accord with this opinion.

Judge Beard dissents from the fourth paragraph of the Court's conclusions, but concurs otherwise. Judge McAlister being disqualified by relationship did not sit at the hearing or participate in the decision.