WARNER HARRIS *v.* W. D. BEASLEY *et al.*

AND

CRENSHAW BROS. *v.* W. D. BEASLEY *et al.*

(*Nashville.*  December Term, 1910.)

1. **CHANCERY JURISDICTION.  To subject judgment debtor's equity in land to his debts upon nulla bona return of execution unsatisfied.**

A judgment creditor, after a *nulla bona* return of an execution unsatisfied, may reach the equity of his debtor in real estate by a bill in chancery against such debtor and the other persons holding a trust on such property.  (*Post, pp.* 607, 608.)

Code cited and construed:  Sec. 6091 (S.); sec. 5025 (M. & V.); sec. 4282 (T. & S. and 1858).

Cases cited and approved:  Fulghum v. Cotton, 6 Lea, 590; Schultz v. Blackford, 9 Lea, 434; Wessel v. Brown, 10 Lea, 685.

2. **SAME.  Same.  Lien is created by the filing of the bill with description of the land, and statement for relief, even before service of process.**

Where a judgment creditor, after a *nulla bona* return of an execution unsatisfied, files a bill in chancery to subject his debtor's equity in land to the payment of such judgment, the filing of the bill describing the land, and stating a case for such form of relief, fastens a lien upon the property, which lien becomes operative immediately upon the service of process upon the debtor after the filing of the bill, and such lien will not be affected by the debtor's sale of his interest in the land to the holders of the trust deed, made on the next day, and even before service of process upon them; for the lien attaches upon the filing of the bill, and the service of process is not prerequisite to the creation of the lien.  (*Post, pp.* 608-615.)

Code cited and construed:  Sec. 6095 (S.); sec. 5029 (M. & V.); sec. 4286 (T. & S. and 1858).

Harris v. Beasley.

Cases cited and approved: Tharp v. Dunlap, 4 Heisk., 686; Williams v. Williams, 11 Lea, 363; Woolridge v. Boyd, 13 Lea, 151; Staples v. White, 88 Tenn., 30; Bridges v. Cooper, 98 Tenn., 381, 384, 392.

3. **SAME. Same. Same. After judgment creditor's bill is filed to reach surplus by sale of the debtor's land incumbered with mortgage trust, the trustee cannot sell the land.**

Where a judgment creditor, after a *nulla bona* return of an execution unsatisfied, files a bill in chancery to sell the debtor's land incumbered with a mortgage or deed of trust, in order to reach the surplus and subject it to the payment of his judgment, not only is a lien created, but the trustee under the deed of trust has no right to sell the land after the filing of such bill, even though no injunction be ordered; for no defendant to such bill has the power to defeat the court's jurisdiction at his will, by taking the property from under the lien and disposing of it out of court. (*Post, pp.* 609-614.)

Cases cited and approved: Fulghum v. Cotton, 6 Lea, 590; Schultz v. Blackford, 9 Lea, 434; Bridges v. Cooper, 98 Tenn., 381, 384, 392.

Cases cited, distinguished, and overruled to extent of conflict: Porter v. Duke, 99 Tenn., 24, 27; McClurg v. McSpadden, 101 Tenn., 433, 435, 436.

4. **SUPREME COURT PRACTICE. Hearing and decision upon record and briefs where certiorari is granted to bring up a case from the court of civil appeals.**

Where a *certiorari* is granted to bring a case from the court of civil appeals into the supreme court, the cause may be there heard upon the record and the briefs filed, and a decision may be rendered and a decree entered, without further argument or hearing. (*Post, p.* 616.)

Harris v. Beasley.

FROM TROUSDALE.

Appeal from the Chancery Court of Trousdale County
to the Court of Civil Appeals, and by *certiorari* from the
Court of Civil Appeals to the Supreme Court.—D. L.
LANSDEN, Chancellor.

JAS. I. MILLER, for complainants.

J. E. FOUST and J. T. BASKERVILLE, for defendants.

MR. JUSTICE NEIL delivered the opinion of the Court.

The bill was filed, alleging judgment, execution, and
*nulla bona* return against W. D. Beasley; that he was
the owner of certain real estate of the value of $2500 or
$3000; that this real estate was encumbered with a trust
deed in favor of the other defendants for a debt of about
$1500, showing a surplus in value more than sufficient
to pay complainant's debt; and asking that the trust
deed be foreclosed by sale of the property, to the end
that a sufficiency of the surplus be applied to the pay-
ment of complainant's debt.   There was an order *pro
confesso* against the principal defendant, W. D. Beasley,
and the other defendants answered, admitting the allega-
tions of the bill as to the trust deed and the value of the
property, and therefore, necessarily, the surplus value

available for complainant's debt. The defense was that said other defendants had purchased the real estate from W. D. Beasley on the morning of December 29, 1909, without any notice of the filing of complainant's bill, or of the rights claimed by him. The bill, however, was filed on December 28, 1909, and process was on that day served on W. D. Beasley.

The right of a judgment creditor to reach the equity of his debtor in real estate in the manner attempted in the present proceeding is one well recognized in this State, and the filing of the bill describing the property and stating a case for this form of relief fastens a lien upon the property. This is established by statute and numerous decisions. Shannon's Code, sections 6091, 6095; *Fulghum* v. *Cotton*, 6 Lea, 590; *Schultz* v. *Blackford*, 9 Lea, 434; *Wessel* v. *Brown*, 10 Lea, 685; *Bridges* v. *Cooper*, 98 Tenn., 381, 384, 392, 39 S. W., 720; *Porter* v. *Duke*, 99 Tenn., 24, 27, 41 S. W., 361; *McClurg* v. *McSpadden*, 101 Tenn., 433, 435, 436, 47 S. W., 698.

*Schultz* v. *Blackford*, supra, and *Bridges* v. *Cooper*, supra, are leading cases. In the first of these, not only is a lien declared to exist, but the right of the trustee under the mortgage to sell after the filing of the bill is denied, even though no injunction be ordered. In that case it appeared that the chancellor mistakenly supposed the trustee had a right to sell notwithstanding the filing of the bill by the creditor, and that he had to delay the final disposition of the cause until such sale should be made, and the surplus, if any, should be paid into court by the trustee. When the sale was made, the property

was bid in by interested parties at a sacrifice. This court set aside the trustee's sale and remanded the cause to another sale, the latter to be made under the direction of the chancery court. In *Bridges* v. *Cooper,* supra, the lien was established in unequivocal terms. It appeared in that case that after the creditor had filed his bill the owner of the property covered by the trust deed obtained from the trust creditor a release of the trust debt on payment of a part thereof and his agreement to turn over to the trust creditor certain purchase-money notes upon a certain sale contemplated. This subsequent sale was made, and the notes transferred accordingly. The court held that by the filing of the bill the judgment creditor, having execution and *nulla bona* return, obtained a lien upon the property, and that the subsequent dealings of the maker of the trust deed and the trust creditor, relieving the property of the trust debt, simply enlarged the judgment creditor's lien, and did not by any means impair the right to satisfaction he had acquired by the filing of the bill.

In *Porter* v. *Duke,* supra, without referring to or noticing the prior cases, it was held that a judgment creditor, who sought to foreclose a chattel mortgage of his debtor and subject the surplus, without impounding the property or obtaining a receiver or injunction, could not obtain relief upon the mere showing that the property was sold, pending the litigation, at a private sale, as authorized by the mortgage, when no surplus was realized, and it was not shown that the sale was fraudulent, or that

the property was sacrificed, or that it did not bring its full value. This case evidently proceeded on the ground that no injury had been done by the sale, since it was not fraudulent, and the property was not sacrificed, and there was no surplus. It, however, narrowly escaped being in conflict with the well-considered case of *Schultz* v. *Blackford*. While it is not necessary to overrule this case, we think it should be confined to its exact facts.

In the case of *McClurg* v. *McSpadden,* supra, it appeared that a bill was filed by a judgment creditor with execution and *nulla bona* return, for the purpose of selling land which was incumbered by a trust deed, in order to reach the surplus. The bill also attacked the trust deed as fraudulent. The trust creditor answered, denying the fraud. A few days before this answer was filed the complainant took a trust deed from his creditor on the same land, which instrument provided that, unless the judgment and costs of the complainant should be paid by the 15th of June, 1897 (which was nearly a year after the filing of the bill), the trustee should sell the property. It also provided that the cause should stand continued until that time, and, if payment should be made as provided, the cause should be dismissed, and, further, that if the property should be sold under the prior trust deed, then the complainant's trust deed should be foreclosed at the same time, and the surplus, after satisfying the prior debts, should go to the complainant's debt. The holder of the prior mortgage was no party to this second trust deed. He foreclosed his trust deed by a sale of the prop-

erty a few months prior to the date fixed for the maturity of the second trust deed, at which sale W. R. Turner became the purchaser. Thereupon the complainants filed a supplemental bill, making the original trust creditor, Manard, and the purchaser, Turner, parties. This bill charged that Manard agreed to postpone the sale under his trust deed until the maturity of the second trust deed, and that for this reason complainant had taken the second trust deed, and that the sale under the first trust deed was made in violation of this agreement, and without notice to the complainants until too late to enjoin it. The fact was not proven, however, that any such agreement was made. It was charged that the land sold for an inadequate price; but this, likewise, was not proven. It appeared that the entire proceeds were necessary to the satisfaction of the debt of the first trust creditor and the expenses of the first trust deed. It was first held that the ground of relief based upon the charge of fraud was not made out. It was conceded that, as the creditor had a judgment, execution, and *nulla bona* return, he acquired a lien upon the defendant's equity in the real estate by the filing of his bill, and it was said that, if proof had been made of the judgment and return of *nulla bona,* the complainant might have impounded the surplus; but that in this case it appeared there was no surplus, if the sale should be allowed to stand; so that the question stated was whether Manard could proceed to execute his trust deed out of court under its provisions, instead of under the orders of the court. It was held that he could do so, and that this holding did not in any wise conflict

with *Fulghum v. Cotton,* supra, and *Schultz v. Black-ford,* supra, "as the effort in these cases was to force a sale, and not to prevent it."

The court added that inasmuch as it appeared that the complainant, for a valuable consideration, had bound himself to delay until June 15, 1897, and that the defendant had not agreed to such delay, the latter could not be postponed until that time; also that inasmuch as the last trust deed provided that, if the property should be sold under the first trust deed, it should then also be sold under the second; that this was a clear concession that Manard, the beneficiary under the first mortgage, might have a sale made under his trust deed, and that complainant was in that event to have the surplus. It was also said that the fact that Manard was requested to postpone the sale, and that complainant offered, if he would do so, to pay his debt, was of no importance, since no tender was made, and that Manard was under no obligation to delay the sale or accept the promise.

On the grounds stated in the last paragraph we think the decision may be sustained; but it must be overruled so far as it holds that a sale may be made under the trust deed after the creditor has filed his bill describing the property, and seeking to subject his debtor's equity therein. This question was fully and carefully discussed and the true principles stated in *Schultz v. Blackford.* *McClurg v. McSpadden* is directly in conflict therewith. To hold that the trustee may sell, notwithstanding the bill, and force upon the judgment creditor the necessity of filing a supplemental bill to reach any surplus that may

Harris v. Beasley.

arise from such sale, or, in case there is no apparent sur-
plus, the burden of showing that the sale was not a fair
one, or that the property did not bring its full value, is
to make his remedy only a colorable one.   When it was
held in *Fulghum* v. *Cotton,* supra, that a judgment cred-
itor of the maker of a trust deed had the right to bring
before a court of chancery the debtor, the trustee, and the
trust creditor, over the opposition of the latter, to the
end that a sale might be made under the direction of the
court, instead of under the trust deed by the trustee, to
reach the surplus, and when it was held, under that and
subsequent cases, that the filing of the bill created a lien,
there went with these adjudications the necessary legal
implications that the court of chancery, being clothed
with power to grant the relief, was likewise possessed of
all authority incidental thereto, proper and necessary to
make the relief effectual, and *a fortiori* that no
defendant to such bill would have the power to
defeat the jurisdiction at his will, by taking the
property from under the lien and disposing of it
out of court.   The suggestion of the existence of such
right in a defendant is itself an anomaly.   It could arise
logically only upon a denial of the lien.   It would be idle
to concede a lien to a judgment creditor by the filing of
his bill, and leave it in the power of the trustee under the
trust deed to defeat the lien by sale thereunder.   It is no
answer to say that the judgment creditor might enjoin
the sale. If the trustee under the trust deed has the right
to make the sale after the filing of the bill creating the
lien, the court of chancery would have no right to enjoin

him. It was held in the case of *Schultz* v. *Blackford* that the proper course of the beneficiary under the mort-gage or trust deed, upon the filing of the bill by a judgment creditor, would be to file a bill in the nature of a cross bill in the same case, and have the sale made in court, and that out of the proceeds he would be entitled to his debts and costs before anything could be paid upon the debt of the creditor. By the filing of the cross bill he would be in a position to prevent undue delay and to secure his rights by prompt action of the court in case the original bill should be dismissed.

Under such a proceeding as the present there is no need of an attachment nor of an injunction, though of course, this may be found necessary in cases where personal property is involved, and its attachment is necessary to make effective the jurisdiction of the court, it being one of the general powers of the court to issue such a writ; and sometimes an injunction may be necessary, or may be proper, for the same reason. But these writs are not necessary in any case to create the lien. That arises upon the filing of the bill describing the property, and setting forth the existence of a judgment and execution and *nulla bona* return, the incumbering mortgage or trust deed, its maturity, and that there will probably be a surplus upon sale made.

We are of the opinion, therefore, in the present case, without regard to any other question, that the complainant acquired the right to satisfaction out of the surplus or equity of defendant Beasley, and to have the sale made under the orders of the court.

In addition to the grounds of relief already set forth, it should be stated that the purchase of the trust property was not made pursuant to a sale under the trust deed, but was a private sale made by the maker of the trust deed to the beneficiaries thereunder for a sum largely in excess of the trust debts. The case, therefore, falls directly within the authority of *Bridges* v. *Cooper,* supra.

Moreover, the sale by W. D. Beasley to his codefendants, after the filing of the bill against him, and the service of process on him, could in no event avail to remove the property from the operation of the lien. The *lis pendens* became operative immediately upon the service of process, after the filing of the bill. *Williams* v. *Williams,* 11 Lea, 363; *Wooldridge* v. *Boyd,* 13 Lea, 151; *Tharp* v. *Dunlap,* 4 Heisk., 686; *Staples* v. *White,* 88 Tenn., 30, 12 S. W., 339; 25 Cyc., 1457. The *lis pendens* became operative when service was effected on W. D. Beasley, which, as already stated, occurred on the 28th day of December, the day before the purchase was made from him by the other defendants. It was not essential, in order to create the *lis pendens,* that service should be made on the purchasers from Beasley, although they were parties to the suit. The object of the bill was to reach his interest in the property, not theirs. The bill sought to have their trust deed foreclosed, it is true, but to the end only that their money should be paid to them, in order to reach a surplus, the property of W. D. Beasley, to be applied to his debt due complainant, and to the costs, so far as might be necessary for these purposes.

Harris v. Beasley.

In what we have said upon the subject of *lis pendens* we do not wish to be understood as intimating that the operation of this doctrine is essential to the rights which accrued to complainant upon the filing of the bill. The lien then attached. We state the *lis pendens* doctrine merely as an additional ground on which the rights of the complainant rest under the facts as disclosed in the record.

It results that the writ of *certiorari* must be, and is hereby, granted, and the cause is heard upon the record and briefs filed; whereupon we decide that a decree must be entered in this court, ascertaining the amount of complainant's debt and interest, and declaring a lien on the land therefor, and granting defendants sixty days to pay the debt and costs into court, and, in default of such payment, directing a sale of the land for cash to pay it. There is no prayer for a sale on time, and without redemption. We give no directions for the payment of the trust debts, because these were settled by agreement of the parties to that instrument when W. D. Beasley made sale of the land to his codefendants.

A similar decree will be entered in the case of *Crenshaw Bros. v. W. D. Beasley et al.*