Miss Barbara Shanks, Complainant, Appellant, *v.* J. O. Phillips *et al.*, Defendants, Appellees.*

(*Knoxville*, September Term, 1932.)

Opinion filed December 18, 1932.

---

*As to discharge of mortgage and taking back of new mortgage as affecting lien intervening between the old and new mortgage, see annotation in 33 A. L. R., 149; 19 R. C. L., 452; R. C. L. Perm. Supp., p. 4668.

W. C. Burton, for complainant, appellant.

Phillips & Hale, for defendants, appellees.

Mr. Justice Chambliss delivered the opinion of the Court.

The question in this case is one of priority as between a mortgage indebtedness owned by the complainant, Miss Barbara Shanks, and a vendor's lien indebtedness owned by the defendant J. O. Phillips. The issues arise out of the following undisputed facts, clearly and fairly stated on the brief in this Court of learned counsel for Phillips, substantially as follows:

Jennie Johnson, being the owner of a tract of 55 acres of land in Hawkins County, on November 9, 1917, exe-

cuted a mortgage thereon to George H. Campbell, Trustee, securing the payment to one Arthur Shanks of a note in the sum of four hundred dollars, due at one year after date, or November 9, 1918. A few days after the maturity of this note so secured, said Jennie Johnson conveyed the tract of land covered by the mortgage to the defendant Robinette, for a recited consideration of $2250, $400 paid in hand, the assumption by Robinette of the $400 due Shanks, and secured by the mortgage, and a series of purchase money lien notes executed by Robinette to Jennie Johnson, several of which notes (those last maturing) came to the hands of and are now owned by the defendant J. O. Phillips. Specific lien was retained in the deed from Johnson to Robinette to secure the payment of these notes.

On September 22, 1928, the note executed by Jennie Johnson to Arthur Shanks being still outstanding and unpaid, Robinette, joined by his wife, executed to George H. Campbell, Trustee, a new trust deed covering the same property and securing to the complainant Miss Barbara Shanks the $400 originally payable to her father, who in the meantime had died.

The indebtedness secured is recited in the trust deed as, "Miss Barbara Shanks, in the sum of $400, note of even date herewith, to take the place of note for said amount executed on November 9, 1917, to Arthur Shanks, and which note is destroyed."

In the new trust deed the grantors covenant that the land is unencumbered "except a balance due on the purchase money notes, amounting to about $800, notes now held by J. O. Phillips."

Upon the date of the execution of the new trust deed, which was registered on the same day, and presumably

at the time thereof, Miss Barbara Shanks released of record the old trust deed, certifying that she was the holder of the indebtedness therein secured, and that the same had been paid and discharged.

The complainant filed her original bill against the defendant J. O. Phillips and Robinette and wife and the trustee for the purpose of having adjudged the priority of right of satisfaction of her mortgage indebtedness out of the lands covered by the trust deed as against the vendor's purchase money lien notes held by the defendant J. O. Phillips, averring the facts to be substantially as hereinbefore recited.

Defendant Phillips duly filed his answer in the cause, in which he set up and asserted the superiority of his vendor's lien as against the new trust deed of 1928. He set up and relied upon the release of record of the old trust deed by the complainant, and said further:

"But whether she had executed this release or not, the mortgage of 1917 is now barred by the statute of limitations of ten years, as enacted and set forth in Section 4464 of Shannon's Code of Tennessee, and which statute is here pleaded and relied upon as against the validity of said mortgage of 1917. The life of such mortgage under said statute expired on November 9, 1928, and by reason of such expiration of the life of that mortgage the complainant cannot connect her new mortgage therewith, as she might possibly have done if that mortgage had continued alive and enforceable. By accepting the new mortgage and not enforcing the old, the complainant waived the benefit of the old mortgage and took no steps to enforce the collection of her debt until the validity of that mortgage had been extinguished by the statute of limitations before mentioned."

Defendant in his answer said further that the complainant accepted the new mortgage without his knowledge or consent, and that he knew nothing of the existence thereof until shortly before the inception of the litigation. Defendant said further that the complainant accepted her mortgage of 1928 with full knowledge of the fact of the outstanding purchase money lien existing thereon in his favor; it appearing that her mortgage in covenanting against encumbrances excepts as against such covenants the balance of purchase money notes due him; the answer adding:

"It thus appears that the complainant accepted her mortgage of 1928 subject to the encumbrance resting upon the land in favor of your defendant, and she is thus estopped from questioning the priority thereof."

The answer called attention to the fact that the original mortgage of 1917 was executed by Jennie Johnson, the original creditor secured was Arthur Shanks; whereas, the new mortgage of 1928 was executed by F. T. Robinett and wife, and the payee therein was the complainant; and that the effect of the transaction was for the complainant to renounce the mortgage of 1917. The answer was filed as a cross-bill, but questions arising under the cross-bill are not necessary to be stated.

 The general rule is that where the holder of a senior mortgage discharges it of record, and contemporaneously, as in the case at bar, takes and registers a new mortgage, he will not, in the absence of paramount equities, be held to have subordinated his security to an intervening lien,—whether mortgage, vendor, mechanic or judgment,—unless this appears to have been his intention. No such intention appears here, but to the contrary. See notation and citations in 33 A. L.

R., 149. Tennessee decisions are not in conflict with the general rule as thus stated. The facts in *Bridges* v. *Cooper,* 98 Tenn., 381, where the priority of the senior lien was denied, take that case out of the general rule. In that case it clearly appeared that the discharge of the mortgage was with the intention of opening the way for a substitution in priority of an intervening lien.

The case for Phillips, the holder of a debt secured by a vendor's lien originally subordinate to the senior mortgage held by Shanks, which has been accorded by the learned Chancellor priority on the facts hereinbefore stated, rests upon the insistence plausibly made that the effect of the Tennessee Statute (Chapter 9, Acts of 1885, Shannon's Code 4464), which bars and discharges liens on realty, unless enforced within ten years from the maturity of the debt, is to subordinate a senior mortgage to an existing junior lien, upon the expiration of the ten year period, even though within this period the holder of the senior mortgage takes and records a renewal mortgage securing his unpaid debt.

It must, of course, be conceded that, unless a new mortgage be taken and contemporaneously recorded this effect would follow, that no extension of the lien beyond the statutory limit can be validly effected by parol, or by unregistered written stipulations. *McElwee* v. *McElwee,* 97 Tenn., 648; *Runnells* v. *Jacobs,* 100 Tenn., 397; *Bank* v. *Smith,* 107 Tenn., 476; *Handly* v. *White,* 8 Higgins (Civ. App.), 624; *Alexander* v. *Muse,* 112 Tenn., 233.

The foregoing cases are relied on for the appellee, Phillips, to sustain the priority of his lien notes. However, while the opinions in these cases all deal with the effect of the Act of 1885, and all deny priority to the

holders of liens originally senior, it does not appear that in any of them the senior mortgagees took *and registered* a new mortgage contemporaneously with the release of the original, as in the instant case.

In *McElwee* v. *McElwee, supra,* an express vendor's lien, reserved in a deed made in 1879, was not attempted to be enforced against subsequent purchasers until 1896, thirteen years after the maturity of the last maturing of the lien notes, no registration entry of an extension or renewal having been made. It was in this case that the constitutionally of the Act of 1885 was adjudged, and the purpose of the legislation was thus clearly expressed:

''It is next insisted that it is not the intent and spirit of the Act to prevent the renewal of purchase money notes, and the continuation of the original lien thereby; that the lien extends from the maturity of the debt, and this maturity may be postponed by renewals from time to time, and the lien thus continued and its extinction deferred. We are of opinion that the Legislature had in view, in the passage of this Act, the general registration laws, and the whole doctrine of the difference between express and implied liens rests upon this idea; that express liens, which are shown by instruments registered, are not affected by the ordinary and usual statutes of limitation, because the liens appear upon the Register's books, and are notice to the world of their existence. If, however, the original notes may be taken up and new notes given instead, the registered instrument will convey no information of this fact. It was the evident purpose of the Act to quiet land titles and to provide that parties having or acquiring title to lands should not be disturbed by the assertion of liens more than ten years

old, to enforce which no steps had been taken, and the existence of which the party holding title has no notice, and no means of acquiring any notice. To hold otherwise would be to open the door to continual and successive renewals, and thus the lien may be extended for a series of years, and third persons could never have any assurance, from the records or otherwise, that their title would not be disturbed by secret liens.''

It is to be observed that the Court in denying the power to renew and extend the lien emphasizes the distinction between unregistered and registered liens, saying, ''that express liens, which are shown by instruments registered, are not affected by the ordinary and usual statutes of limitation, because the liens appear upon the Register's books, and are notice to the world of their existence,'' etc. It seems obvious that the Court had in mind that it was unregistered extensions of liens beyond the statutory limit of ten years which it was the purpose of the Act to bar, consistent with the object of the Act, which was to quiet titles.

This statute was next before the Court in *Runnells* v. *Jacobs, supra,* the opinion being again by Mr. Justice WILKES, and it was held that it applied even between the original parties to a trust deed not attempted to be foreclosed until after the ten year limit, despite evidence of indulgence prayed by and granted to the debtor. The holding in the *McElwee* case was reviewed and it was again emphasized that the object of the Act was to quiet titles, and the Court says, directly applicable to the instant case and discussion, ''If the parties desire to extend the lien mortgage beyond the ten years, it can be done by executing a new mortgage, trust or declaration of lien to be registered as was the original. But it would

render the Act forceless to hold that such mortgage, trust or express lien can be kept a lien by a parol promise, or one in writing but not registered, to pay the debt or keep the mortgage in force.'' And the Court concludes:

"It was the purpose and is the meaning of the Act, that express liens, mortgages, and deeds of trust shall not be enforceable after ten years from the maturity of the debt secured, and titles are quieted by conclusively presuming that such liens, mortgages, and trusts are satisfied and extinguished after the lapse of ten years from the maturity of the debt secured, *nothing else appearing upon the books of the Register.*''

The closing line we have italicised is significant of the distinction which is pertinent to the case now before us.

This statute was next applied in *Bank* v. *Smith,* 107 Tenn., 476, it being held that, ''The lien of the first, or Ellett deed of trust, was 'barred' and 'discharged' by the lapse of more than ten years between the maturity of the secured note and the sale by the trustees,'' citing Acts 1885, Ch. 9, Sec. 1; Shan. 4464; *McElwee* v. *McElwee,* 97 Tenn., 649; *Runnels* v. *Jacobs,* 100 Tenn., 397.

Now it is true that Mr. Justice COLDWELL proceeds to say that, ''It matters not that W. A. Collier and wife may have intended the paper executed by them to Mrs. Wheeler as a renewal of the Ellett deed of trust, and that she may have so understood it, for no language that could have been employed would have extended the life of that deed of trust, especially as against intermediate lienors beyond the period of ten years from the maturity of the Ellett note. The statute is plain, positive and unyielding on this point.''

██ It is this broad and unrestricted language on which learned counsel for Phillips in this case strongly rely, but, this language must be considered in connection with the facts with which the Court was dealing, a case of an *unrecorded* paper, which the Court had recently held in *Runnells* v. *Jacobs* was ineffective, even between the immediate parties, to save the bar of the statute. And, again, since in the same paragraph the opinion had just cited the recent opinions in *M'cElwee* v. *McElwee* and *Runnells* v. *Jacobs,* as his authority for the rule, he was reaffirming, it must be assumed that he was not intending to repudiate the distinction therein expressly recognized between renewals by contemporaneously executed and *recorded* instruments, and those of the class before the Court in *Bank* v. *Smith.*

Finally, two years later, Mr. Justice WILKES wrote the opinion in *Alexander* v. *Muse,* 112 Tenn., 233, another case of an attempted renewal extending a mortgage by a memorandum on the note only, and again cites the Act of 1885 and says:

"This act has been passed upon in the case of *McElwee* v. *McElwee,* 97 Tenn., 649, 37 S. W., 560, in which it was held that its provisions barred a lien on realty at the expiration of ten years from the maturity of the original debt secured, although the debt may have been kept alive and the time of payment postponed by renewals of the notes within ten years next before the institution of the suit.

"The same was held in regard to a deed of trust in *Runnells* v. *Jacobs,* 100 Tenn., 397, 45 S. W., 980, and again in *Bank* v. *Smith,* 107 Tenn., 476, 64 S. W., 756.

"These cases are conclusive upon the question involved in this suit."

Obviously, the learned writer of these opinions did not deem it necessary to repeat the statement he had expressly made of the distinction to be recognized in giving application to this act between an unrecorded memorandum of the parties providing for a renewal and extension, and the execution and registration of a mortgage securing and renewing the debt. So, consistently with this view, the Court of Civil Appeals, in *Handly v. White,* 8 Higgins, at page 628, holding that the Act of 1885 "not only bars the remedy, but extinguishes the right" and "raises a complete and irremovable bar in the way of the lien holder," adds, in exception, "unless there be a renewal in a manner of equal dignity to that of the original instrument," citing the decisions of this Court above reviewed.

No paramount equities in favor of the vendor's lien holder appear here. He consciously acquired only a lien subordinate to that of the outstanding and registered Shanks mortgage, and is no way prejudiced by the extension of this prior lien. He is left exactly where he was when he purchased his notes. This is held in numerous cases cited by the annotator in the note in 33 A. L. R., at page 162, *et sequi.*

It results that we are constrained to reverse the decree of the Chancellor and remand the cause for further proceedings in accordance herewith.